KENNETH A. ROGERS AND AUDREY J. ROGERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rogers v. Commissioner
Docket No. 16645-85.
United States Tax Court
T.C. Memo 1987-374; 1987 Tax Ct. Memo LEXIS 374; 53 T.C.M. (CCH) 1473; T.C.M. (RIA) 87374; July 28, 1987. *374 Petitioners prevailed in the Memorandum Findings of Fact and Opinion reported as T.C. Memo. 1986-529 and now claim an award of litigation costs under sec. 7430, I.R.C. 1954. Held: Petitioners exhausted the available administrative remedies within the Internal Revenue Service; the Government's position in the case was unreasonable; petitioners are entitled to recover reasonable costs of litigation including the costs of litigating their motion for the recovery of their litigation costs. Steven M. Chamberlain and William E. Whitley, for the petitioners. Willie Fortenberry, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: This case is before the court on petitioners' motion for reasonable litigation costs to which respondent has objected. In accordance with Rule 232, [1] the parties have filed affidavits, counter-affidavits, and memoranda in support of their respective positions. The following issues are presented for decision: 1. Whether petitioners exhausted the administrative remedies available to them within the Internal Revenue Service as required by section 7430(b)(1). [2] *375 2. Whether the "position of the United States in the civil proceeding was unreasonable" within the meaning of section 7430(c)(2). 3. If petitioners are entitled to recover litigation costs, whether they are entitled to recover, as a part of those costs, the expense of preparing and advocating their claim for costs. 4. If petitioners are entitled to recover their litigation costs, what amount does the statute allow. BACKGROUND FACTS The merits of this case were decided in favor of petitioners in T.C. Memo. 1986-529, filed October 27, 1986. The record shows that Internal Revenue Service (IRS) Agent Montanez examined petitioners' Federal income tax return for 1981. During the course of his examination, he asked petitioner Kenneth Rogers (hereinafter petitioner or Mr. Rogers) about the nature of a $ 50,000 wire-transfer that was deposited to petitioners' bank account on September 11, 1981, and Mr. Rogers explained that the money was a loan which he had obtained from Chamara International, S.A. (Chamara), to help finance the purchase and construction of a new home in Inverness, Florida. The explanation *376 was apparently accepted by the agent, a small adjustment was made with respect to another item, and a $ 509 deficiency was paid. Subsequently, in the course of an investigation of Ramon Milian-Rodriguez, who was later convicted on charges of money laundering and possession of cocaine, and of Chamara, the IRS agents found petitioner's name on several documents. One of these documents was a paper, bearing petitioner's signature, which named petitioner as the "manager" of a bank account with Alegemene Bank Nederland (ABN), Netherland Antilles in the name of Chamara. The agent on March 25, 1985, contracted petitioner and asked him whether he had signatory authority over the Chamara account, and petitioner responded that he did not. The agent then sent petitioner a copy of the document naming petitioner as manager of the account. [3] The agent later called petitioner on April 10, 1985, and petitioner advised the agent that he had turned the audit over to his brother-in-law, an attorney, William E. Whitley (Whitley). There is no showing that the agent attempted to contact Whitley. Instead, on May 13, 1985, respondent mailed petitioner the notice of deficiency on which this proceeding is *377 based. In the notice of deficiency, dated May 13, 1985, respondent determined that petitioner had unreported ordinary income in the amount of $ 50,000. In their petition, petitioners alleged that the $ 50,000 wire-transfer was not taxable income but was a loan. Based on the evidence presented at the trial, the Court found that the $ 50,000 wire-transfer to petitioner's bank account was, in fact, a loan which petitioner had obtained to help pay for his new home in Inverness. As we shall discuss, the transaction was documented as a loan, interest was paid on the $ 50,000 for 2 years, and the principal amount was repaid. Respondent has conceded that petitioners prevailed in the Memorandum Findings of Fact and Opinion filed in this case (T.C. Memo. 1986-529). Respondent contends, however, that petitioners *378 did not exhaust their administrative remedies within the IRS and that petitioners have not shown that the position of the United States was unreasonable. Because respondent has opposed the motion for litigation costs, petitioners' counsel has been required to expend time in preparing and substantiating petitioners' claim for litigation costs. To cover these additional expenditures, petitioners have filed a supplemental claim for fees incurred in attempting to recover their litigation costs. LEGAL FRAMEWORK Effective with respect to civil tax litigation begun in this Court between February 28, 1983, and December 31, 1985, section 7430[4] *379 *380 provides that a taxpayer who prevails in his lawsuit may be awarded reasonable litigation costs, including attorney's fees. Such an award may be made, however, only if the taxpayer establishes that the administrative remedies within the IRS were exhausted and that the position of the United States was unreasonable. An examination of the legislative history expressing the policy of section 7430 leads us to conclude that Congress intended the prevailing party to be compensated for expenses unnecessarily incurred, to provide relief to taxpayers seeking to litigate a just claim in response to a position unreasonably pursued by the government, and thereby to "enable individual taxpayers to vindicate their rights regardless of their economic circumstances." H. Rept. No. 97-404, 97th Cong., 1st Sess. 11 (1981).
Phillips v. Commissioner,88 T.C. 529, 536 (1987). 1. Exhaustion of Administrative Remedies
Respondent maintains that petitioners failed to exhaust the administrative *381 remedies available within the IRS as required by section 7430(b)(2) and, therefore, do not qualify for the recovery of their litigation costs. Respondent recognizes that petitioners did not have an opportunity to participate in an Appeals Office conference prior to filing the Tax Court petition but argues that petitioners' failure to answer adequately a series of questions and to furnish certain documents requested at a post-petition Appeals Office conference demonstrates a failure to exhaust their administrative remedies. To support his position, respondent relies on sections 301.7430-1(b)(2) and 301.7430-1(f)(2), Proced. & Admin. Regs. After the petition was filed, an Appeals Officer by letter dated August 27, 1985, invited petitioners' counsel to a settlement conference. At this conference, the Appeals Officer requested a long list of documents and items of information on numerous points. Respondent asserts that petitioners' counsel failed to answer all of the questions and to supply all of the requested documents. On that ground, respondent argues that petitioners failed to exhaust their administrative remedies and are not, therefore, entitled to litigation costs. Petitioners' *382 counsel answers that he provided the Appeals Officer with all information he had available and, in order to avoid further costs, made an offer of settlement (to recognize 50 percent of the $ 50,000 as capital gain), and the Appeals Officer made a counteroffer to settle on the basis of petitioners' recognizing the full $ 50,000 as capital gain. On this ground, petitioners contend that they have complied with the regulations. The exhaustion of administrative remedies requirement is "intended to preserve the role that the administrative appeals process plays in the resolution of tax disputes by requiring taxpayers to pursue such remedies prior to litigation." H. Rept. No. 97-404, at 13 (1981). (Emphasis added.) Consistent with this objective, section 301.7430-1(b), Proced. & Admin. Regs., provides that a party has not exhausted the administrative remedies with respect to any tax matter "for which an Appeals office conference is available" within the IRS unless the party "prior to filing a petition in the Tax Court" participates in an Appeals Office conference. [5] *384 The regulation defines "participates" to require the taxpayer to disclose -- To the Appeals office all relevant information *383 regarding the party's tax matter to the extent such information and its relevance were known or should have been known to the party or qualified representative at the time of the conference. Sec. 301.7430-1(b)(2), Proced. & Admin. Regs. In this case, the record is clear that no Appeals Office conference was available to petitioner before the notice of deficiency was mailed. The notice of deficiency was issued without giving petitioners an opportunity to request or participate in such a conference, file a written protest, or agree to extend the statute of limitations for further *385 investigation of their case. [6]
Respondent points to section 301.7430-1(f)(2), [7] *386 Proced. & Admin. Regs., however, which provides that a party's administrative remedies are considered exhausted for purposes of section 7430 if, as in this case, the party did not receive a 30-day letter and the party does not refuse to participate in an Appeals conference while the case is in a docketed status. Respondent relies on this regulation to support his argument that, by failing to answer some of the questions asked at the post-petition conference to the satisfaction of the Appeals Officer, petitioners did not exhaust their administrative remedies within the IRS. We do not agree. The regulations make a distinction between pre-petition and post-petition Appeals conferences. Section 301.7430-1(b)(2), Proced. & Admin. Regs., it is true, contains the broad definition of "participates" quoted above, but that definition is "For purposes of this paragraph," i.e., paragraph (b) of section 301.7420-1, Proced. & Admin. Regs., which deals with pre-petition Appeals Office conferences. No similar broad definition of "participates" *387 appears in paragraph (f) of section 301.7430-1, Proced. & Admin. Regs., the paragraph which deals with post-petition Appeals Office conferences. There is a reason for this distinction. Before a notice of deficiency is issued, the tax case is in the administrative or investigatory stage. The IRS is seeking acts on which to base its decision whether it should determine a tax deficiency and thereby force the taxpayer to incur litigation costs or pay the determined tax. The regulation (sec. 301.7430-1(b), Proced. & Admin. Regs.) is designed to require the taxpayer to disclose information needed by the IRS for that decision or forego the recovery of his litigation costs. By its terms, the requirement applies "prior to filing a petition in the Tax Court or a civil action for refund in a court of the United States." This requirement is consistent with the legislative history of the section, referred to above, stating that section 7430 refers to exhaustion of administrative remedies "prior to litigation." H. Rept. No. 97-404, at 13 (1981). The post-petition conference (sec. 301.7430-1(f), Proced. & Admin. Regs.), on the other hand, occurs after the IRS has made the decision to force the *388 taxpayer to incur litigation costs or pay the determined deficiency. The case has passed from the administrative or investigatory to the litigation or adversarial stage. The regulations contain precise definition of "participates" in the context of the post-petition Appeals Office conference. This is evidently attributable to the fact that, once the petition is filed, the discovery and stipulation rules of this Court, which contemplate an open interchange of information, become available to both parties to round out the facts they need for the trial or settlement of the case. See Rules 70 through 75 and 90 through 91, Tax Court Rules of Practice and Procedure.
The post-petition conference, however, serves the very useful purpose of providing the parties an opportunity to exchange information, assess the merits of their respective positions, and attempt to reach a settlement without incurring the costs of a trial. "Recoverable litigation costs include only the reasonable amount of costs which are incurred in the litigation of a civil tax action or proceeding." H. Rept. No. 97-404, at 14 (1981). An open exchange of facts at a post-petition conference may lead to a settlement without *389 further litigation costs; the extent of a party's participation in a post-petition Appeals Office conference may, therefore, be relevant in deciding whether further litigation costs could have been avoided or rendered unnecessary. See DeVenney v. Commissioner,85 T.C. 927, 933 (1985). This is not a case in which the taxpayers have "selected silence as their litigation strategy." DeVenney. v. Commissioner, supra at 933. To the contrary, petitioner participated in a post-petition conference and furnished available information to the Appeals Officer. Petitioners' offer of settlement and respondent's counteroffer, in our view, are sufficient to demonstrate that petitioners "participated" in the post-petition conference within the meaning of section 301.7430-1(f)(2), Proced. & Admin. Regs. We hold that petitioners did not fail to exhaust the administrative remedies available to them within the IRS. 2. Reasonableness of the Government's Position
In order for a taxpayer to be a "prevailing party," as defined in section 7430(c)(2), he must establish that the Government's position in the civil proceeding was "unreasonable." The section carefully distinguishes between the period when the *390 case is pending administratively and the period after the suit is filed. H. Rept. No. 97-404, at 14 (1981) states: The committee intends that the costs of preparing and filing the petition or complaint which commences a civil tax action be the first of any recoverable attorneys fees. Fees paid or incurred for the services of an attorney during the administrative stages of the case could not be recovered under an award of litigation costs.
This means that we must examine the reasonableness of respondent's position's position during the litigation, from the date the petition was filed on June 10, 1985. Ewing and Thomas, P.A. v. Heye,803 F.2d 613, 615 (11th Cir. 1986); United States v. Balanced Financial Management, Inc.,769 F.2d 1440, 1450 (10th Cir. 1985); Ashburn v. United States,740 F.2d 843, 848 (11th Cir. 1984); Wasie v. Commissioner,86 T.C. 962, 967 (1986); Baker v. Commissioner,83 T.C. 822, 827 (1984), affd. on this issue but remanded on another point 787 F.2d 636 (D.C. Cir. 1986). But see Powell v. Commissioner,791 F.2d 385, 390 (5th Cir. 1986); Kaufman v. Egger,758 F.2d 1, 4 (1st Cir. 1985). The term "unreasonable" is not defined in section 7430, but the legislative *391 history (H. Rept. No. 97-404, at 12 (1981)), suggests the following: The committee intends that the determination by the court on this issue is to be made on the basis of the facts and legal precedents relating to the case as revealed in the record.
In Wasie v. Commissioner, supra at 968-969, the Court stated: The standards for reasonableness are to be based upon all the facts and circumstances surrounding the litigation (post-petition), and the fact that the Government eventually loses or concedes is not necessarily determinative. Board Ave. Laundry & Tailoring v. United States,693 F.2d 1387, 1391-1392 (Fed. Cir. 1982); * * *
In other words, the Government's position is reasonable if it has a reasonable basis in law and fact. Baker v. Commissioner, supra at 828-829; DeVenney v. Commissioner,85 T.C. at 930. Petitioners have shown there was no reasonable basis in fact for the Government's position and the case involves no major legal issue. The record shows that, consistent with the allegations in the petition, Mr Rogers had informed the IRS in his first interview with the revenue agent, and proved at the trial, that the disputed $ 50,000 deposited in their bank account was a loan *392 from Chamara. No substantial evidence to the contrary was introduced. The record shows petitioners owned a home (Redlands) in the Miami area and decided to sell it and move to Inverness in central Florida, where they had bought land for a new home. Because of the then prevailing high interest rates and the scarcity of loan money, they had difficulty selling Redlands. Eventually, Braulio Vila (Vila) agreed to buy it for $ 250,000 in March 1981, provided petitioners would permit him to defer paying a substantial part of the purchase price until he sold his own home (Coral Gables). The deal was closed April 19, 1981. In the course of the negotiations, Vila had learned that petitioners needed about $ 60,000 for their Inverness home, and he agreed to help them arrange a loan from a source in Central America. On April 2, 1981, Vila, petitioner, and Ramon Milian-Rodriguez went to Panama and Curacao on a private airplane, arranged an initial loan of $ 50,000 from Chamara plus a $ 10,000 line of credit, and returned the same day. On September 11, 1981, $ 50,000 was wire-transferred from the Antilles bank to petitioners' checking account in Ocala, Florida. Petitioners made installment *393 payments on the note for 2 years and, when Vila sold his Coral Gables property and paid petitioners the balance due on the Redlands sale, petitioners paid the note. The transaction was documented as a loan by a note and mortgage in favor of Chamara covering the property petitioners had bought in Inverness; eight negotiated quarterly checks to Chamara, each for $ 2,260.62, the installment amounts due under the terms of the notes; a $ 50,000 cashier's check to Chamara paying the agreed principal amount of the debt; and a satisfaction of the mortgage recorded after the note and mortgage were paid. Notwithstanding this evidence, respondent's position throughout the litigation was that petitioners sold their Redlands property for $ 300,000, not $ 250,000, and that the $ 50,000 was "laundered" by taking it to Panama and Curacao and returning it to the United States in the form of a loan. Respondent has asserted that this additional $ 50,000 was the price of the inventory of a going business that was covered by the sale and is taxable as ordinary income. To refute respondent's position, petitioners introduced the following documents: 1. Petitioners' contract with Vila for the sale of the *394 Redlands property for $ 250,000 providing for payment or assumption of the existing mortgage against the property, for a cash payment, and for a mortgage to secure payment of the balance of the purchase price. 2. A statement attached to a letter of G. David Parrish (Parrish), attorney, showing the closing of the Redlands sale at a price of $ 250,000, including a cash payment of $ 60,000 to petitioners at the closing and a credit for the Coral Gables property. 3. A payment by Vila to petitioners of $ 73,000 in January 1982 and a copy of a letter from Parrish to petitioners dated December 22, 1984, stating that he had delivered a release of Vila's mortgage to petitioners on the Redlands property in exchange for a $ 50,879.32 check, which represented the balance due on the sale of the Redlands property. Within about 3 months of the receipt of this payment from Vila and after some negotiations, petitioners made the $ 50,000 principal payment in satisfaction of their note to Chamara. Petitioners buttressed these documents with their own credible testimony explaining why they handled the transaction the way they did. Lengthy cross-examination failed to develop any facts showing the transaction *395 was not exactly what it was documented to be. As to respondent's position that the $ 50,000 was consideration for the sale of the inventory of a going business, petitioners' tax return for 1981 shows no income from such a business, and the revenue agent did not determine any omission of income on that ground. To the contrary, petitioners' 1981 joint return shows that Mr. Rogers had wages of $ 23,413.75 as an employee of County Wide Electric Co. and Mrs. Rogers operated a real estate sales business from which she netted $ 7,858. At one time, Mrs. Rogers made and sold dish gardens to supplement the family's income but by 1981 she had abandoned that business. There was no substantial evidence to the contrary. [8] *396 Notwithstanding this documentation, which was disclosed not later than the post-petition appeals conference and most of which was stipulated, respondent engaged in no discovery activity. He called no witnesses except the revenue agent, who had no first hand knowledge of the facts. Respondent attempted to introduce in evidence some of the documents found in the file on the investigation of Ramon Milian-Rodriguez without providing the Court with an adequate foundation for their admissibility. Even if they had been admitted, the documents would have done nothing more than raise some possible suspicions. We do not question that the circumstances of the loan from Chamara warranted investigation by the IRS or that respondent was entitled to challenge petitioners' version of the facts; the IRS is obviously entitled to investigate any suspicions its agents may have of off-shore money laundering. Nor do we disagree with his argument that the trial record would have been more satisfactory if Vila, who was subpoenaed by petitioners but did not appear, and other individuals involved in the transaction had been called as witnesses. However, given the *397 documentation of the secured loan obtained and repaid that we have in this case, we think it was unreasonable to take this case to trial without any evidence whatever to show petitioners and Vila falsified the contract to sell their Redlands property for $ 250,000; that petitioners signed a bogus $ 50,000 note and filed of public record a bogus mortgage to a foreign corporation against their Inverness property; and that they did not, in fact, pay $ 50,000 to the foreign corporation in discharge of the note and mortgage even though a cashiers check shows they did. See Kreimes v. Dept. of Treasury,764 F.2d 1186, 1191 (6th Cir. 1985) (valuation related to a casualty loss); Don Casey, Co. v. Commissioner,87 T.C. 847, 864-865 (1986) (fraud); Grob, Inc. v. United States,599 F.Sup. 47 (E.D. Wisc. 1984) (accumulated earnings tax). Respondent decided to issue the notice of deficiency, take the case to trial, and rely almost entirely upon cross-examination, which proved abortive. We think it more reasonable, under the standards of section 7430, for the Government rather than for petitioners to bear the cost of this litigation. 3. Fees for Pursuing Motion for Litigation Costs
Petitioners *398 have claimed an additional $ 3,037.50, computed at the rate of $ 125 per hour for 24.3 hours, for costs associated with their pursuit of their claim for litigation costs. Respondent has not filed a response to this additional claim but has informally objected to it. As we view section 7430, the costs incurred in seeking an award of litigation costs may be included in the award. See, e.g., Tyler Business Services, Inc. v. N.L.R.B.,695 F.2d 73, 77 (4th Cir. 1982) (Equal Access to Justice Act); King v. McCord,707 F.2d 466, 468 (11th Cir. 1983) (Equal Pay Act). The Third Circuit, however, in Lee v. Johnson,799 F.2d 31, 39-40 (3d Cir. 1986), has held that fees incurred to obtain such an award are not recoverable unless respondent's reason for objecting to an award of litigation costs itself was unreasonable under the Equal Access to Justice Act. See also Haitian Refugee Center v. Meese,804 F.2d 1573, 1574 (11th Cir. 1986), vacating on this ground 791 F.2d 1489, 1500 (11th Cir. 1986: Brinker v. Guiffrida,798 F.2d 661, 668 (3d Cir. 1986); American Academy of Pediatrics v. Bowen,795 F.2d 211, 213-214 (D.C. Cir. 1986); Russell v. National Mediation Board,775 F.2d 1284, 1291 n. 8 (5th Cir. 1985); *399 Cornella v. Schweiker,741 F.2d 170, 172 (8th Cir. 1984); Wolverton v. Heckler,726 F.2d 580, 583-584 (9th Cir. 1984); Rawlings v. Heckler,725 F.2d 1192, 1196 (9th Cir. 1984). Even if this additional test of unreasonableness were appropriate, we would find respondent's position in opposition to the award of litigation costs unreasonable and therefore award to petitioners a reasonable amount for costs incurred in litigating the fee award issue. We express no opinion as to whether such additional test of unreasonableness is required. 4. The Amount of the Litigation Costs
Petitioners have claimed reimbursement for the fee for filing the petition ($ 60), for the cost of serving subpoenas on two witnesses ($ 20.50), the cost of the trial transcript ($ 342), 47.2 hours of legal services at a rate of $ 100 per hour by one attorney, William E. Whitley ($ 4,720), and 157.6 hours at a rate of $ 125 per hour ($ 19,700) by another attorney, Steven M. Chamberlain. In his affidavit, however, Chamberlain states that he had an agreement with petitioners that the maximum amount they are to pay is $ 11,000 plus one-third of any recovered litigation costs. "To alleviate the complexity of the indeterminate *400 formula, " Chamberlain states, he will limit the maximum additional fee to $ 6,000 so that he is claiming a total of $ 17,000. Thus, the petitioners' total claim for litigation costs come to $ 17,000 for Chamberlain, $ 4,720 for Whitley, $ 422.50 for expenses incurred ($ 60 for petition, $ 20.50 for service of subpoenas, and $ 342 for transcript) plus $ 3,037.50 for pursuing the motion for costs, a total of $ 25,180. It should be noted that the maximum amount that may be allowed in any civil proceeding under the applicable form of section 7430 is $ 25,000. Sec. 7430(b)(1). Respondent has advanced a series of objections to the amount of the attorney's fees included in the costs claimed by petitioners. Those objections cannot properly be disposed of without a hearing. See Baker v. Commissioner,787 F.2d 636, 644 (D.C. Cir. 1986), vacating and remanding 83 T.C. 822 (1984). The parties will be directed to attempt to resolve their dispute as to the amount of the fees. If they are unable to reach agreement, a further hearing on the amount of the costs may be necessary. [9] *401 *402 To reflect the foregoing, An appropriate order will be entered.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. 3. At the trial, Mr. Rogers testified that in obtaining the loan from Chamara he signed a number of documents, that he did not recall signing this particular one, that parts of the documents (including this one) were in a foreign language which he could not read, that he did not understand that it gave him any control over the account, and that he never exercised any control over it. ↩
4. SEC. 7430. AWARDING OF COURT COSTS AND CERTAIN FEES. (a) In General. -- In the case of any civil proceeding which is -- * * * (2) brought in a court of the United States (including the Tax Court and the United States Claims Court),
the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding. (b) Limitations. -- (1) Maximum dollar amount. -- The amount of reasonable litigation costs which may be awarded under subsection (a) with respect to any prevailing party in any civil proceeding shall not exceed $ 25,000. (2) Requirement that administrative remedies be exhausted. -- A judgment for reasonable litigation costs shall not be awarded under subsection (a) unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service. * * * (c) Definitions. -- For purposes of this section -- (1) Reasonable litigation costs. -- (A) In general. -- The term "reasonable litigation costs" includes -- (i) reasonable court costs, * * * (iv) reasonable fees paid or incurred for the services of attorneys in connection with the civil proceedings. * * * (2) Prevailing party. -- (A) In general. -- The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which -- (i) establishes that the position of the United States in the civil proceeding was unreasonable, and (ii)(I) has substantially prevailed with respect to the amount in controversy, or (II) has substantially prevailed with respect to the most significant issue or set of issues presented. * * * (3) Civil actions. -- The term "civil proceeding" includes a civil action.
By sec. 1551 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2752, several amendments, effective with respect to fees paid after Sept. 30, 1986, in proceedings instituted after Dec. 31, 1985, were adopted. ↩
5. Sec. 301.7430-1. Exhaustion of administrative remedies. (b) Tax, penalty and addition to tax -- (1) In general. A party has not exhausted its administrative remedies available within the Internal Revenue Service with respect to any tax matter for which an Appeals office conference is available under sections 601.105 and 601.106 of the Statement of Procedural Rules (26 CFR Part 601) (other than a tax matter described in paragraph (c)) unless -- (i) The party, prior to filing a petition in the Tax Court or a civil action for refund in a court of the United States -- (A) Participates, either in person or through a qualified representative described in section 601.502 of the Statement of Procedural Rules, in an Appeals office conference; * * * (ii) If no Appeals office conference is granted, the party, prior to the issuance of a statutory notice of deficiency in the case of a petition in the Tax Court or the issuance of a statutory notice of disallowance in the case of a civil action for refund in a court of the United States -- (A) Requests an Appeals office conference in accordance with sections 601.105 and 601.106 of the Statement of Procedural Rules; (B) Files a written protest if a written protest is required to obtain an Appeals office conference; and (C) Agrees under section 6501(c)(4) to extend the time for an assessment of tax if necessary to provide the Appeals office with a reasonable time period to consider the tax matter.
Sec. 301.7430-1(b)(1)(i)(B) and (f)(2)(i), Proced. & Admin. Regs., was declared invalid by this Court in Minahan v. Commissioner,88 T.C. 492 (1987), insofar as it provides that a taxpayer's refusal to extend the statute of limitations is to be taken into account in determining whether the taxpayer has exhausted his administrative remedies under sec. 7430(b)↩.
6. Respondent justifies the precipitous issuance of the notice of deficiency on the ground that the 3-year statute of limitations imposed by sec. 6051(a) would have expired on May 17, 1985. However, if the $ 50,000 was gross income, it substantially exceeded 25 percent of the gross income reported on petitioners' return and the 6-year statute of limitations prescribed by sec. 6501(e)↩ would have applied. 7. Sec. 301.7430-1(f)(2), Proced. & Admin. Regs., provides: (f) Exception to requirement that party pursue administrative remedies. A party's administrative remedies within the Internal Revenue Service are considered exhausted for purposes of section 7430 if -- * * * (2) In the case of a petition in the Tax Court -- (i) The party did not receive a preliminary notice of proposed deficiency (30-day letter) prior to the issuance of the statutory notice of deficiency and the failure to receive such notice was not due to actions of the party (such as a refusal to sign an extension of time for assessment or failure to supply requested information or a current mailing address to the district director or service center having jurisdiction over the tax matter); and (ii) The party does not refuse to participate in an Appeals office conference while the case is in docketed status. ↩
8. In H. Rept. No. 97-404, at 12 (1981), it is stated that one of the factors to be taken into account in determining whether the Governments position was unreasonable is "Whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case." Petitioners have asserted that the ordinary income treatment was "a bargaining tool." We are inclined to agree but find it unnecessary to decide the question. 9. In resolving their dispute, the parties may find helpful the following list of factors set forth in Johnson v. Georgia Highway Express, Inc.,488 F.2d 714, 717-719 (5th Cir. 1974), involving a Title VII class action for discrimination: (1) The time and labor required. * * * (2) The novelty and difficulty of the questions. * * * (3) The skill requisite to performing the legal services properly. * * * (4) The preclusion of other employment by the attorney due to acceptance of the case. * * * (5) The customary fee. * * * (6) Whether the fee is fixed or contingent. * * * (7) Time limitations imposed by the client or the circumstances. * * * (8) The amount involved and the results obtained. * * * (9) The experience, reputation, and ability of the attorneys. * * * (10) The "undesirability" of the case. * * * (11) The nature and length of the professional relationship with the client. * * * (12) Awards in similar cases. * * *
These factors derive from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2-106 (1980). In this regard we note that the Sixth Circuit rejected the "checklist" approach of Johnson in favor of an approach based on the number of hours reasonably expended on the case multiplied by the attorney's normal hourly billing rate. See Northcross v. Board of Education,611 F.2d 624, 642-643 (6th Cir. 1979). The Sixth Circuit stated that many of the Johnson factors would be taken into account in an analysis of the reasonableness of the number of hours expended and the fee charged. In Hensley v. Eckerhart,461 U.S. 424, 429-430 (1983), the Supreme Court cited the Johnson factors as an appropriate standard for determining a reasonable attorney's fee award. The Supreme Court noted, however, as the Sixth Circuit did in Northcross, that many of the Johnson factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. 461 U.S. at 434 n. 9. Thus it would seem that Johnson and Northcross↩ are compatible. See also Rule 232(d).