FRANK W. WILBOURN, JR., AND BETTY K. WILBOURN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilbourn v. Commissioner
Docket No. 15306-87.
United States Tax Court
T.C. Memo 1989-222; 1989 Tax Ct. Memo LEXIS 222; 57 T.C.M. (CCH) 348; T.C.M. (RIA) 89222; May 9, 1989; As corrected May 30, 1989 James T. Bland, Jr., for the petitioners. Rebecca A. Dance, and Calder L. Robertson for the respondent. COUVILLION
MEMORANDUM OPINION
COUVILLION, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986 and Rule *223 180 et seq. [1]
In a notice of deficiency, respondent determined a deficiency in petitioners' Federal income tax for 1983 in the amount of $ 14,784.75. When the case was called for trial, the parties filed a Stipulation of Settlement in which respondent conceded all adjustments in the notice of deficiency. Petitioners then filed their motion for litigation costs under Rule 231. Petitioners were residents of Memphis, Tennessee, at the time their petition was filed. For the year 1983, Emmett Gadberry, Jr., (Gadberry) issued a Form 1099-MISC to Betty Ann Wilbourn (petitioner) evidencing rental income payments to her of $ 95,000. On Schedule E of their 1983 Federal income tax return, petitioners reported "Rents Received" of $ 1,250 from "farm property -- Collierville, Tennessee" and $ 64,292.20 from "farm property -- Arkansas" for a total of $ 65,542.20. Petitioners also reported on Schedule E, under "Estates or Trusts," income of $ 28,381.28 from "Betty Ann *224 Kellogg Wilbourn Trust" (the Trust). There were no references on Schedule E or on any other schedule of the return to the Form 1099 issued by Gadberry regarding the $ 95,000 rental payments to petitioner. On Schedule B of their 1983 Federal income tax return, petitioners reported interest income of $ 3,908.71. On a separate schedule, petitioners itemized their interest income, which included $ 1,673.97 from First Tennessee Bank (the Bank) consisting of $ 1,185.42 and $ 488.55, respectively, on a checking and savings account. By letter dated November 27, 1985, respondent's Service Center at Memphis, Tennessee, informed petitioners of a discrepancy between the rental and interest income reported on their 1983 tax return with the amounts reported by the payers, Gadberry and the Bank, as reflected on Forms 1099. In the letter, petitioners were requested either to explain where the amounts on the Forms 1099 were reported on their return, or to explain why those amounts were not reported. On January 7, 1986, petitioners responded to the Service Center with a letter from their attorney, James T. Bland, Jr., (Bland), in which he explained the discrepancy between the $ 65,542.20 rental *225 income reported by petitioners with the $ 95,000 reported by Gadberry: The difference of $ 29,458.00 was reported as gross rent on Form 1041 filed for the Betty Ann Kellogg Wilbourn Trust, E.I. No. 62-6099-803. The net amount of rental income from the Trust, $ 28,381.28, is reported on Schedule E of the taxpayers' return. With respect to the interest income, Bland explained: * * * the difference of $ 1,330.00 of interest reported by First Tennessee Bank is due to the fact that duplicate Form 1099s were filed by First Tennessee Bank. The only interest actually earned from First Tennessee Bank was $ 488.55 from a savings account and $ 1,185.42 from a Portfolio One Insured Investment account. Please note on the enclosed statement the amount $ 1,185.42 of interest paid for 1983, and note that this is a corrected statement. This corrected statement had the effect of duplicating a previous 1099(s) filed by the Bank. In his letter, Bland referred to an enclosure, which he identified as a corrected Form 1099 issued by the Bank to support his explanation of the interest income discrepancy. The enclosure, however, was inadvertently omitted from Bland's letter. On December 31, 1986, the *226 Service Center mailed to petitioners a "Report of Individual Income Tax Examination Changes" (the Report), dated December 29, 1986, in which an upward income adjustment of $ 30,788 was proposed for petitioners' 1983 tax year. In the Report, petitioners were advised, inter alia, that they had 30 days to provide respondent with any additional information they wanted to be considered. Within 30 days of receipt of the Report, petitioners submitted a copy of the Form 1041 filed by the Trust for its 1983 tax year, and a copy of a corrected statement from the Bank for the 1983 tax year. On March 2, 1987, respondent issued the notice of deficiency which gave rise to this litigation. The notice of deficiency contained the same adjustments of $ 30,788 proposed in the Report of December 29, 1986. Bland initially called the Problems Resolution Office at the Service Center where he was provided a "stop" number and the name of a "contact" person. He was advised to send any information which might explain the purported discrepancies to the contact person. He then mailed a letter, dated May 13, 1987, along with copies of the Form 1041 for the Trust and a copy of the corrected statement from *227 the Bank to the contact person at the Service Center. In his letter, Bland gave the identical explanations concerning the purported discrepancies in rental and interest income as he had done in his letter of January 7, 1986. In addition, Bland requested respondent to issue a revised notice of deficiency or a statement that the deficiency had been abated on or before May 27, 1987, in order to alleviate petitioners of having to file a petition with this Court and making a request for attorney's fees and litigation costs. Subsequent to the May 13, 1987, letter, neither petitioners nor Bland received any further communication from respondent. On June 1, 1987, Bland filed the petition herein. In the petition, petitioners alleged inter alia that "the Betty Kellogg Wilbourn Trust (#62-6099803) earned the subject $ 29,458.00 in rental income." Petitioners also alleged that, because "the distributable net income from said Trust was reported on Schedule E of petitioners' 1983 Federal income tax return, all of the rental income is properly accounted for." Finally, petitioners alleged that the only interest earned by petitioners was that shown on their income tax return as filed and that, *228 accordingly, there was no deficiency. Two days after filing their petition, petitioners received a letter dated June 3, 1987, from the Service Center in which they were advised that, on the basis of additional information made available, their tax liability for 1983 had been reconsidered, and their return was being accepted as filed. Petitioners were advised to disregard the notice of deficiency and were further advised that they did not need to file a petition with the Tax Court. On June 10, 1987, respondent's district counsel first became involved in this case when the petition was assigned to Howard P. Levine (Levine), an attorney with district counsel in Nashville, Tennessee. On June 22, 1987, the administrative file was received by Levine and, on July 20, 1987, he filed respondent's Answer. In the Answer, respondent admitted that petitioners reported a distributive share of income in the amount of $ 28,381.28 on their 1983 return from the Trust, but denied for lack of knowledge petitioners' allegations that this item, when added to the rental income reported by petitioners, would fully account for the $ 95,000 reported by Gadberry. Respondent's position as set forth in *229 the Answer was based upon a review of the administrative file which contained Bland's letter of January 7, 1986, to the Service Center in which Bland explained the interest and rental income discrepancies. In addition, other purported factors influencing respondent's denial in its Answer were: (1) There was no description of the rental property on the Trust's 1983 Form 1041 or any reference to rental income received from Gadberry; (2) no explanation with respect to why a Form 1099, in the amount of $ 95,000, had been sent only to petitioner by Gadberry; and (3) the undivided ownership interests of petitioner and the Trust in the subject property had neither been provided nor established. The administrative file did not have a copy of the Memphis Service Center's letter of June 3, 1987, in which respondent conceded the adjustments. Subsequent to the filing of respondent's Answer, petitioners' case was assigned to Appeals Officer Archie Thurman (Thurman) of respondent's Nashville, Tennessee, office. After a review of the file and conversations with Bland, Thurman stated in a letter dated October 22, 1987, that petitioners' position was correct and conceded the adjustments for rental *230 and interest income contained in the notice of deficiency. Since Bland had indicated his intention to seek litigation costs, a substantial portion of Thurman's letter dealt with why petitioners would not be entitled to recover such costs. At that point, the case was apparently returned by Appeals to Levine. In a letter to Bland dated January 12, 1988, Levine formally withdrew respondent's offer to concede the adjustments contained in the notice of deficiency. In the letter, Levine stated that "pursuant to our telephone conversation of January 4, 1988, we do not believe that sufficient evidence is available at this time to concede the adjustments pertaining to the determination by the respondent that rental income received from Emmett Gadberry was underreported." In addition, Levine requested information from Bland in order to "properly identify the undivided interests of the interested parties in order to ensure that rental income was properly reported." After a series of letters and telephone calls between Levine and Bland, in which Bland submitted additional documentation to establish the undivided interest which the Trust owned in the property leased to Gadberry, Levine, on February 10, 1988, mailed *231 a letter to Bland conceding the interest and rental income adjustments in the notice of deficiency. In the letter, Levine stated that the concessions were based upon a review of the "Lease, Warranty Deeds, and accounting worksheets" which were received on January 22, 1988, and February 3, 1988. Respondent, however, did not concede the issue of litigation costs and devoted most of his letter to that subject. On February 10, 1988, a Stipulation of Settlement was executed for petitioners by Bland and by respondent's counsel, Levine, and the stipulation was filed with the Court when the case was called from the trial calendar on February 22, 1988. At that time, petitioners filed their motion for litigation costs. [2]
Respondent opposes petitioners' motion on the ground that petitioners *232 have not established that respondent's position in the litigation was not substantially justified.[3]Section 7430 authorizes reasonable litigation costs to a prevailing party in a proceeding in this Court if certain conditions are met. A taxpayer may be awarded litigation costs for a proceeding commenced after December 31, 1985, (such as the instant case, since the petition was filed on June 1, 1987) if the taxpayer establishes, among other things, that the position of respondent was "not substantially justified." Section 7430(c)(2)(A)(i) (now section 7430(c)(4)(A)(i)); Gantner v. Commissioner,92 T.C. 192 (1989); Egan v. Commissioner,91 T.C. 704, 711 (1988). In determining whether respondent's position is not substantially justified, the question is whether respondent's position was unreasonable. Vanderpol v. Commissioner,91 T.C. 367 (1988). In evaluating the reasonableness of respondent's position, the Court has considered the following factors: (1) Whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of *233 the case; (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation; and (3) such other factors as the Court finds relevant. Hubbard v. Commissioner,89 T.C. 792 (1987); Sher v. Commissioner,89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). Section 7430(c)(4) defined "the position of the United States," i.e., respondent's position, in proceedings in this Court to include "(A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administration action or inaction) upon which such proceeding is based." (Emphasis supplied.) Section 7430(c)(4) was added to the Code in 1986 and applied to any amounts paid after September 30, 1986, in proceedings *234 commenced after December 31, 1985. Pub. L. 99-514, section 1551(e), 100 Stat. 2753. Section 7430(c)(4) thus applies herein. (For proceedings commenced after November 10, 1988, see section 7430(c)(7).) In Sher v. Commissioner, supra, this Court interpreted section 7430(c)(4) to mean that respondent's position includes only those actions or inactions occurring at or after the point at which District Counsel becomes involved in the proceedings. This was the same conclusion reached in Weiss v. Commissioner,89 T.C. 779 (1987). On appeal, however, the Second Circuit reversed Weiss and held that the focus for determining respondent's position should be "on the Commissioner's final position as set forth in the statutory notice of deficiency." Weiss v. Commissioner,850 F.2d 111, 115 (2d Cir. 1988), affg. 88 T.C. 1036 (1987), revg. 89 T.C. 779 (1987). This position was reconsidered in Egan v. Commissioner, supra, and, in a Court reviewed opinion, this Court held it would continue to follow Sher v. Commissioner, supra, and not follow the Second Circuit's conclusion in *235 Weiss, except in cases appealable to the Second Circuit. See Golsen v. Commissioner,54 T.C. 742 (1970), affd. 745 F.2d 985 (10th Cir. 1971). In contrast to Egan, however, petitioners in this case argue on brief that, in the Sixth Circuit, to which appeal of the instant case lies, the position of the United States includes not only the post-petition conduct but also the pre-litigation conduct and the administrative action of the agency. Petitioners base their argument on Comer v. Commissioner,856 F.2d 775, 780 (1988), revg. and remanding an unpublished order of this Court. In short, petitioners assert that the Sixth Circuit's opinion in Comer held that courts must review the actions of the Internal Revenue Service both before and after the filing of their position to decide whether respondent took a position that was not substantially justified, and that this Court is bound to follow Comer because of the rule in Golsen v. Commissioner, supra.
We do not agree with petitioners' reading of Comer. The petition in Comer was filed before 1986 and section 7430(c)(4) was not applicable in that *236 case. The Sixth Circuit looked to section 7430(c)(4), but only to reach its conclusion that, for actions commenced before 1986, the position of the United States encompassed not only the government's in-court litigating position but also the pre-litigation conduct as well. 856 F.2d at 779-780. In a footnote, the Sixth Circuit specifically stated (856 F.2d at 780 n. 1): This interpretation is consistent with the current version of § 7430(c) as amended by the Tax Reform Act of 1986. That subsection provides that, in civil actions commenced after December 31, 1985, "position of the United States includes -- (A) the position taken by the United States in the civil proceedings, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based." 20 U.S.C. § 7430(c)(4) (1988 Supp.). However, this definition is not dispositive of cases, such as this one, which was filed prior to December 31, 1985. [Emphasis supplied.] (As noted, for proceedings commenced after November 10, 1988, see section 7430(c)(7). *237 ) Up to and through the hearing on petitioners' motion herein, respondent maintained that his position was substantially justified. However, in his brief filed after the hearing, respondent conceded that, from January 4, 1988, the date the settlement offer was withdrawn by Levine, and thereafter, respondent's position in this case was not substantially justified. Based on this concession, at the very least, petitioners are entitled to recovery of litigation costs for the period after January 4, 1988. At issue is whether respondent's position was substantially justified from the time district counsel initially became involved, June 10, 1987, to January 4, 1988, the date respondent conceded his position was not substantially justified. In this regard, petitioners bear the burden of proof. Rule 232(e); Polyco, Inc. v. Commissioner,91 T.C. 963, 965 (1988); Stieha v. Commissioner,89 T.C. 784, 790 n. 5 (1987). On this record, the Court is satisfied and concludes that respondent's actions were designed to elicit a concession from petitioners on their entitlement to litigation costs. The evidence shows that, when counsel for respondent filed the Answer *238 on July 20, 1987, he had had possession of the administrative file since June 22, 1987. The file did not have a copy of the Service Center's letter of June 3, 1987, conceding the case; however, the file contained other information, including Bland's letter of explanation and auditor's notes, which suggested concession of the case. In his testimony, respondent's counsel, Levine, admitted he knew, at that time, that the Service Center was recommending "that the return be accepted." Although Levine was of the opinion that the administrative file did not contain sufficient evidence to concede the case, he did not contact the Service Center or endeavor to ascertain its basis in recommending a concession of the case. After the Answer was filed, the case was referred to respondent's Appeals Office, whose function, as Levine testified, was to "settle" cases. That office (Appeals) also recommended concession of the case, which Levine refused to accept because, as he testified, Appeals made no independent findings of its own when a case had previously been considered by the Service Center. When Appeals sent the case back to Levine, recommending concession, Levine testified that his effort *239 in soliciting additional documentation from petitioners was to prepare the case for trial. However, respondent conceded on brief that Levine's efforts at that point were not substantially justified, a concession this Court finds was amply justified by the record, as counsel appeared to be plowing the same ground, albeit a little deeper, which the Service Center and Appeals had already gone over. It is significant, however, that, throughout the entire history of the case, commencing with the Service Center's involvement and continuing through District Counsel's involvement, petitioners made clear their intention to recover litigation costs. The correspondence from Appeals and District Counsel to petitioners focused heavily on this question and was also the subject of several telephone conversations with Bland. Levine admitted that this question was also the subject of discussion between him and the Appeals officer. The Court finds that the question of litigation costs was primarily the concern of respondent's counsel in this matter, and respondent's position in exacting additional documentary information from petitioners on the rental question was not warranted, as was subsequently *240 conceded by respondent, and was calculated to somehow establish that respondent's position was reasonable. Accordingly, the Court concludes that respondent's position was not substantially justified commencing from June 10, 1987, the date District Counsel became involved. In their affidavit, petitioners claimed the following costs: $ 757.50 - Attorney's fees, 10.2 hours at $ 74.26 per hour,   for the period from the filing of respondent's   Answer through and including February 12, 1988
60.00 - Filing petition with the U. S. Tax Court
22.80 - Photocopies
37.23 - Long-distance telephone calls
5.45 - Postage
$ 882.98 -TOTAL [4]
Respondent has not challenged these costs as being unreasonable. In addition, petitioners are entitled to a recovery of costs for the preparation, filing, and hearing of their motion for recovery of litigation *241 costs. See Rogers v. Commissioner,T.C. Memo. 1987-374, as well as any costs incurred from June 10, 1987. Since these additional costs are not included in petitioners' affidavit, petitioners will be allowed a reasonable period to submit proof of such costs. For the foregoing reasons, petitioners' motion for litigation costs is granted. An appropriate order will be entered.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. As finally agreed upon, the rental payments from Gadberry were fully reported as follows: $ 64,292.20-On petitioners' Form 1040, Schedule E 30,707.80 -On the Trust's Form 1041, Gross Rent, and $ 95,000.00-(TOTAL) reflected on petitioner's Schedule K-1 as rent, $ 28,381.28 The Court observes that these returns are no models of clarity for the source-identification of income.↩
3. At trial, respondent conceded that petitioners' net worth at the commencement of the proceedings was not in excess of $ 2,000,000. Respondent also conceded that petitioners otherwise met the additional conditions for litigation costs under section 7430↩.
4. In the motion and through the hearing, petitioners did not claim pre-litigation costs. On brief, petitioners argued for pre-litigation costs, which the Court disallows on the basis of Sher v. Commissioner,89 T.C. 79 (1987), affd. 861 F.2d 131↩ (5th Cir. 1988).