ISADORE CASSUTO AND THALIA CASSUTO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 30954-87, 37016-87,    Filed August 28, 1989.
37145-87.

*Arnold Y. Kapiloff,* for the petitioners.
*Rose E. Gole,* for the respondent.

WELLS, *Judge:* This matter is before us on petitioners' motion for award of reasonable litigation costs (the motion), filed pursuant to Rule 231 [1] and section 7430. By statutory notices of deficiency, respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Taxable year | Deficiency | Date notice issued |
|---|---|---|
| 1980 | $6,840 | Aug. 27, 1987 |
| 1981 | 653 | June 15, 1987 |
| 1982 | 41,591 | Aug. 27, 1987 |

In the statutory notices for 1980 and 1982, respondent also determined that the deficiencies for those years were subject to increased interest under section 6621(c). The entire 1981 and 1982 deficiencies and most of the 1980 deficiency were attributable to a limited partnership interest held by petitioner Isadore Cassuto (petitioner) in Salisbury Traders.

### FINDINGS OF FACT

Petitioners resided in Jamaica, New York, when they filed their petitions. The petitions aver that petitioner invested $5,000 and $1,300 in Salisbury Traders in 1980 and 1981,[2] respectively, and that "Salisbury Traders was a partnership that was formed for the purpose of trading in government

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code as in effect for the relevant periods.

[2] Petitioner's motion states that petitioner's limited partnership investment in Salisbury Traders in 1980 and 1981 was in "an aggregate sum of $6,000.00." The $300 discrepancy regarding petitioner's cash investment is unexplained, but, in any event, immaterial to our holding below.

securities and commodities, including futures contracts and options with respect thereto."

Respondent audited the partnership tax returns of Salisbury Traders for the years 1980 through 1982 and concluded that, with certain minor exceptions, all items of partnership income and expense should be reversed and eliminated. Respondent accordingly issued examination reports that concluded that partners in Salisbury Traders should be charged with tax deficiencies for 1980 and 1981, and should be entitled to tax refunds for 1982. The partnership-level examination reports were dated November 30, 1984, and September 16, 1985, and partner-level examination reports consistent therewith were sent to petitioners dated May 16, 1986, and December 3, 1986. The examination reports sent to petitioners specified tentative deficiencies for their 1980 and 1981 years in the amounts of $6,828.43 and $653, respectively, and a refund for their 1982 year in the amount of $2,985.

In accordance with the examination reports, respondent issued a statutory notice on June 15, 1987, which determined a deficiency in petitioners' 1981 tax in the amount of $653. The 1981 deficiency was based on disallowance of a $30,781 deduction for petitioner's share of Salisbury Traders' investment interest expense, and a concurrent reversal of $29,464 of investment income from Salisbury Traders—a net increase in petitioners' taxable income of $1,317. The grounds given in the notice of deficiency for disallowance of income and expense from Salisbury Traders were (1) the transactions at issue were either shams or devoid of economic substance; (2) there was no profit motive with respect to the transactions; and (3) petitioner was not at risk within the meaning of section 465.

In late July of 1987, after the issuance of the 1981 statutory notice but before any statutory notices were issued for petitioners' 1980 or 1982 years, Howard Silverman, a revenue agent whom petitioners assert they "never met, spoke to or wrote to," wrote the following internal memorandum in regard to petitioners' tax case:

Isadore Cassuto invested in the entity known as Salisbury Traders for the years in question.

For the year 1980, the taxpayer claimed a loss of [$]16,429 from that entity. For the year 1981, a statutory notice was issued to the taxpayer for the same issue.

Taxpayer's 1980 tax return has an expired statute of limitation. Therefore the government is restricted out of any adjustments for that year. Taxpayer was requested to substantiate his cash investment in that entity and refused to comply. In order to determine the ramifications of the barred year, that information is necessary.

The 1982 return of the taxpayer would normally result in an overpayment, as partnership report shows decrease of both income and expenses to zero (-0-). However due to the problem statute in 1980, that is not reasonable treatment. Thusly, due to taxpayer's failure to respond to our inquiry, to protect the government's interest, a statutory notice of deficiency is to be issued for year 8212, the sole issue adjusted being disallowance in full of investment interest expense from Salisbury of [$]83,360. Reported income and capital gains should remain as per return.
* * *

Soon thereafter, petitioners received the following note on Internal Revenue Service letterhead:

Date: 7/29/87

I & T CASSUTO

Your 1980 tax return has been returned from Appeals for further consideration. Our review has found the statute to have expired for adjustment to that return. Accordingly, no additional liability exists on your part for that return only, and no further action is necessary by you on that return.

/s/ Howard Silverman
Revenue Agent

Notwithstanding Mr. Silverman's comments regarding the expired statute of limitations for 1980, notices of deficiency were issued on August 27, 1987, to petitioners for that year and the 1982 year. Those statutory notices determined deficiencies for 1980 and 1982 in the amounts of $6,840 and $41,591, respectively, even though the examination reports sent to petitioners had indicated a tentative deficiency of $6,828.43 for 1980 and a tentative refund of $2,985 for 1982. The 1980 statutory notice adjusted petitioners' income by disallowing a $16,429 ordinary loss[3] from Salisbury

---

[3]The claimed ordinary loss apparently was the net of investment income of $256 and investment interest expense of $16,668 from Salisbury Traders. The $17 difference between the net of those amounts and the loss claimed on the return (according to the statutory notice—the return is not in the record) is unexplained.

Traders and eliminating a $3,049 short-term capital gain from a "T&S Co."

The only adjustment to petitioners' income made by the 1982 statutory notice was the disallowance of a deduction for $83,360—petitioner's share of investment interest expense from Salisbury Traders. The 1982 statutory notice did not eliminate any of the income items from Salisbury Traders reported on petitioners' return: short-term capital gain ($1,930), long-term capital gain ($17,046), and investment income ($80,703).

After the issuance of the 1980 and 1982 statutory notices, petitioners timely filed their petition for the 1981 year on September 14, 1987. They subsequently filed timely petitions for the 1980 and 1982 years in November 1987. In respondent's answer to the petition for the 1980 year, he admitted that the statute of limitations for that year had expired more than 3 years *before* the notice of deficiency was issued.

Before any trial, the parties agreed to a settlement of the disputed deficiencies, and on November 22, 1988, the Court entered decisions in accordance with that settlement, as follows:

| Year | Deficiency | Sec. 6621(c) |
|------|------------|--------------|
| 1980 | - - - | No |
| 1981 | $4,684 | Yes |
| 1982 | - - - | No |

Although the final settlement provided that there was a deficiency only for petitioners' 1981 year, the parties previously had agreed that there was a deficiency for the 1982 year in the amount of $250. At petitioners' request and for their convenience, however, the parties agreed to combine the amounts of the agreed deficiencies and attribute them entirely to 1981 and not at all to 1980 or 1982.

After the Court received petitioners' motion on December 23, 1988, we vacated the decisions and refiled each decision document as a "Stipulation of Settlement." We vacated the entered decisions on the grounds that "it appears that petitioners' counsel did not intend that the agreed decision document entered by this Court be conclusive of [matters relating to petitioners' reasonable litigation costs]."

The deficiencies specified in the audit examination reports, the deficiencies later determined in the statutory notices, and the deficiencies to which the parties finally agreed are summarized as follows:

| Year | Examination reports | Statutory notices | Agreed settlement |
|---|---|---|---|
| 1980 | $6,828 | $6,840 | - - - |
| 1981 | 653 | 653 | $4,684 |
| 1982 | (2,985) | 41,591 | - - - |
| Total | 4,496 | 49,084 | 4,684 |

## OPINION

We must decide whether petitioners are entitled to litigation costs, and, if so, the reasonable amount of such costs. Section 7430(a) provides that a prevailing party in a Tax Court proceeding may be awarded reasonable litigation costs. Respondent objects to awarding litigation costs to petitioners, arguing that (1) respondent's position was substantially justified (see sec. 7430(c)(2)(A)(i)[4]); (2) petitioners did not substantially prevail on the most significant issue in the case (see sec. 7430(c)(2)(A)(ii)); (3) petitioners unreasonably protracted the proceedings by failing to verify their cash investment in Salisbury Traders and by failing to respond to respondent's formal discovery requests (see sec. 7430(b)(4)); and (4) petitioners did not exhaust their administrative remedies (see sec. 7430(b)(1)). Respondent also argues that even if petitioners are entitled to some litigation costs, they should not be awarded the full amount for which they ask because it is higher than the amount of reasonable costs. Petitioners have the burden of proof on all issues relating to their claim for litigation costs. Rule 232(e).

Respondent's actions after District Counsel became involved in the instant case generally appear to have been reasonable, and under this Court's interpretation of section 7430, we likely might find the Government's position to be substantially justified and petitioners not entitled to litigation costs. See *Gantner v. Commissioner,* 92 T.C. 192, 194 (1989); *Egan v. Commissioner,* 91 T.C. 705, 712 (1988).

---

[4]The Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 6239, 102 Stat. 3743, redesignated the provisions of sec. 7430(c)(2)(A), as applicable herein, as sec. 7430(c)(4)(A) for proceedings commenced after Nov. 10, 1988.

Venue for appeal of the instant case lies in the Second Circuit, however, so we instead follow that court's holding in *Weiss v. Commissioner*, 850 F.2d 111, 115-116 (2d Cir. 1988), revg. and remanding 88 T.C. 1036 (1987), that the position of the United States for purposes of section 7430 includes any position set forth by respondent in a statutory notice of deficiency, not merely positions taken after District Counsel became involved. See *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

### Section 7430(c)(2)(A)(i)

The essence of respondent's position in the statutory notices was: for 1980 and 1981, to eliminate both income and expense from Salisbury Traders in the computation of petitioners' taxable income, but, for 1982, to eliminate only the claimed expense from Salisbury Traders but include the reported income from Salisbury Traders in computing taxable income. Respondent's position in the statutory notices also may be characterized as an assertion that petitioners had deficiencies totaling $49,084 (plus increased interest on $48,431 of that amount) for the 3 years in issue. Given (1) the indication in the earlier examination reports that net deficiencies for the 3 years totaled only $4,496.43, and (2) the parties' ultimate settlement of a total deficiency of only $4,684 for those years, the determined 3-years' deficiency of $49,084, on the surface at least, would appear to be not substantially justified.

Respondent argues, however, that the positions taken in the several statutory notices were substantially justified because he necessarily had to adopt inconsistent positions to prevent being "whipsawed" by contradictory positions taken by petitioners. Respondent views petitioners as having taken contradictory positions based on his understanding that the 1980 and 1981 petitions allege that Salisbury Traders' transactions were bona fide and should be respected as reported on the tax returns, while the 1982 petition alleges that the partnership's transactions were tax motivated so that income and expense therefrom should not be includable on the tax returns.

Respondent, however, misreads the 1982 petition. The 1982 petition is consistent with the other petitions in that

its primary allegation is that respondent incorrectly disallowed the interest deduction; the 1982 petition implicitly alleges that the transactions should be respected as reported on the tax returns. The petition only alleges as an alternative pleading that the transactions should not be respected—petitioners' alternative allegation in effect is that if respondent's disallowance of the interest expense is proper, then the $99,679 of income reported from Salisbury Traders also is properly excludable from taxable income. More importantly, however, respondent's argument incorrectly focuses on the petitions. By the time the petitions were filed, respondent already had taken a "position" in the proceedings for which he, in the Second Circuit, may be held accountable for purposes of section 7430, namely, the explanations and amounts of deficiency set forth in the statutory notices. That the petitions subsequently alleged alternative inconsistent positions, by itself, is no defense to respondent's earlier positions in the statutory notices that were inconsistent among the years and that disregarded a statute of limitation for 1980 previously acknowledged to petitioners as having expired.

Respondent cites *Wickert v. Commissioner,* T.C. Memo. 1986-277, affd. 842 F.2d 1005 (8th Cir. 1988), as authority for disallowance of petitioners' attorney fees. In *Wickert,* the Commissioner asserted that a taxpayer was not entitled to alimony deductions for 1979 and 1980 because payments to his former wife were not alimony, yet at the same time asserted that the former wife was taxable for 1979 and 1980 because such payments were alimony. The inconsistent positions the Commissioner took in *Wickert* were taken in regard to the treatment of two parties to the same transaction, and we find *Wickert* to be inapposite to the positions taken by respondent in the instant case.

Respondent also cites *Herrington v. Commissioner,* 854 F.2d 755 (8th Cir. 1988), affg. *Glass v. Commissioner,* 87 T.C. 1087 (1986), to support disallowance of petitioners' attorney fees. In *Herrington,* the Eighth Circuit held that taxpayers were precluded from contesting the Commissioner's determinations because they had a "duty of consistency." The Herringtons had engaged in London Options straddles transactions in 1976 through 1978 which, as

reported on their tax returns, offered the taxpayers an ordinary loss in 1 year and a capital gain in about the same dollar amount, but taxed at the lower capital gain rates, for a subsequent year. The period of limitations for the Herringtons' 1976 tax year expired before the Commissioner issued any statutory notice for the year, and the Commissioner argued that the 1977 gain associated with the loss claimed for the time-barred 1976 year properly was includable in 1977 income because of the taxpayers' duty of consistency. The Eighth Circuit held that a duty of consistency arises upon: (1) A representation or report by a taxpayer; (2) on which the Commissioner relied; and (3) an attempt by the taxpayer after the expiration of the statute of limitations to change the previous representation to recharacterize the situation in such a way as to harm the Commissioner. 854 F.2d at 758. If those elements are met, the Commissioner is entitled to act as if the previous relied-upon representation is true, even though it may be untrue, and the taxpayer is estopped to assert the contrary. *Herrington v. Commissioner,* 854 F.2d at 758. The Eighth Circuit then held that the duty of consistency prevented the Herringtons from denying includability in their 1977 taxable income of the gains associated with the time-barred 1976 losses.

Petitioners' situation is similar in some ways to the Herringtons', but the results which respondent sought via the statutory notices in the instant case differ from the results approved in *Herrington.* First, in contrast to *Herrington,* respondent in the instant case did issue a statutory notice for the time-barred year (1980), even though respondent's agents already had recognized the year was time-barred. Second, the position taken in the 1982 statutory notice was unlike the treatment approved by the court for the Herringtons' 1977 gains. In *Herrington,* only the gains in the later year that were associated with earlier year losses were allowed to be includable in the later year's income. In the 1982 statutory notice herein, respondent took a broadbrush approach and treated as taxable income all the income originally reported in 1982, rather than merely the portion of the income attributable to the 1980

time-barred losses.[5] Moreover, respondent's position in the 1982 statutory notice is inconsistent with the issuance at all of any statutory notice for 1980. By issuing a 1982 statutory notice which excluded all expenses but none of the income reported from Salisbury Traders and also issuing a 1980 statutory notice which essentially excluded all expenses and income from Salisbury Traders, respondent himself took inconsistent positions which cannot be defended by an argument that petitioners must adhere to a duty of consistency. See also *Arkansas Best Corp. v. Commissioner,* 83 T.C. 640, 659-660 (1984), revd. in part on another issue 800 F.2d 215 (8th Cir. 1986), affd. 485 U.S. 212 (1988).

Rather, we think respondent's actions in this case are more akin to those in *Powell v. Commissioner,* 91 T.C. 673 (1988), where the Commissioner in a statutory notice for 1976 disregarded a partnership's investment in coal leases, including an associated debt, as a sham transaction, but in a statutory notice for 1977 respected the transaction so as to justify income recognition from cancellation of the now-respected debt. In *Powell,* we recognized that the Commissioner *at times* must take alternative or inconsistent positions to protect the revenue, but because respondent's alternative position therein "was entirely without legal or factual foundation" and unreasonable under section 7430, we awarded the taxpayer litigation costs. 91 T.C. at 679. Similarly, we can perceive no logical or justifiable basis for respondent's issuance in the instant case of a statutory notice for 1980 after his revenue agent earlier had identified and acknowledged a legitimate statute of limitations bar. Moreover, we believe the issuance of a 1982 statutory notice that failed to eliminate the 1982 income attributable to disallowed 1981 expenses also was not substantially justified. We therefore find respondent's positions in the 1980 and 1982 statutory notices to be not substantially justified.

---

[5]Although the record is unclear as to what portion of the income reported in 1982 is attributable to 1980 deductions, we are confident that much, if not all, of the 1982 income properly is associated with the 1981 deductions, not with deductions for the time-barred year.

We are supported in this conclusion by the parties' settlement taking into account a deficiency for 1982 of only $250; such a small agreed-upon deficiency implies that most of the income originally reported for Salisbury Traders for 1982 was eliminated from taxable income. We feel certain that respondent would not have agreed to such an elimination if the income were attributable to 1980 losses.

We find, however, that respondent's position in the 1981 statutory notice was substantially justified.

### Section 7430(c)(2)(A)(ii)

Respondent next argues that petitioners did not meet the requirements of section 7430(c)(2)(A)(ii) because they did not substantially prevail with respect to the most significant issue presented. Section 7430(c)(2)(A)(ii), however, contains two separate subclauses—subclause (II), on which respondent relies, and subclause (I), which requires that the taxpayer substantially prevail with respect to the amount in controversy. We interpret section 7430(c)(2)(A)(ii) to contain disjunctive requirements; i.e., to have "substantially prevailed," a taxpayer only need to have prevailed either with respect to the amount in controversy *or* with respect to the most significant issue, not both. In that the statutory notices determined total deficiencies of $49,084 against petitioners and the parties agreed to settle the dispute for a total deficiency of $4,684, we think it is clear that petitioners substantially prevailed with respect to the amounts at issue. Accordingly, we hold that petitioners meet the requirements of section 7430(c)(2)(A)(ii).

### Section 7430(b)(1) and (4)

Respondent also argues that petitioners unreasonably protracted the proceedings by not responding to respondent's formal discovery requests and not verifying their cash investment in Salisbury Traders (sec. 7430(b)(4)), and that petitioners failed to exhaust their administrative remedies (sec. 7430(b)(1)). Respondent mailed formal discovery requests to petitioners on July 8, 1988, approximately 8 and 10 months after the respective petitions were filed herein. At about the same time as the mailing of those discovery requests, petitioners mailed to respondent documents verifying their cash investment in Salisbury Traders to respondent's satisfaction. Petitioners state that they did not respond to the formal discovery requests because settlement discussions were at the time already in progress between their counsel and District Counsel, and that petitioners' counsel personally assured District Counsel that the re-

quested information would be submitted if no settlement could be reached. Indeed, only 4 months after respondent made those discovery requests, the parties submitted to the Court agreed settlements of the deficiencies in issue.

We do not condone petitioners' failure to comply with the time periods, as set forth in our Rules, within which they were required to respond. See, e.g., Rules 71(c) and 72(b). A relaxation of the Rules is solely within the discretion of the Court. Rule 25(c). Under the circumstances of the instant case, the appropriate course for petitioners to have taken was to proceed by a motion for either an enlargement of time under Rule 25(c) or a protective order under Rule 103, pending the outcome of the settlement negotiations. Considering the other factors present in the instant case, however, we will deem the time within which petitioners were required to respond to respondent's discovery requests to have been enlarged in this instance. Accordingly, we decline to find that petitioners' failure to respond immediately to the discovery requests was unreasonable, given the surrounding circumstances.

As for the alleged failure to verify his cash investment, petitioner suggests that he was prepared to verify his cash investment before July 1988, but did not do so until then because of respondent's administrative handling of the whole matter and an injury to himself. In a memorandum supporting the motion, the facts of which petitioner verifies by a sworn affidavit, petitioner relates the following sequence of events leading to the issuance of the statutory notices: Petitioners had no contact from any of respondent's examiners regarding the years in issue before they received the partner-level examination report for the 1980 year from respondent's Holtsville, New York, office. Petitioner soon thereafter filed with the Holtsville office a protest to that examination report, which protest did not mention the statute of limitations as a potential bar to the 1980 year. After hearing that other partners in Salisbury Traders were settling cases with respondent's agents in Florida, petitioner in September 1986 contacted the Appeals Officer handling Salisbury Traders cases in Florida in an attempt to settle his cases. Petitioner was told, however, that the Appeals Officer could not transfer the case to Florida from

Holtsville, and that he should talk to Holtsville personnel. When petitioner thereafter called the Holtsville office, he was told that he had to wait until the Holtsville office contacted him regarding the cases. Subsequently, in December 1986, petitioners received the partner-level examination reports for the 1981 and 1982 years.

In April 1987, a Mrs. Spandau from respondent's Holtsville office contacted petitioner, and over the course of three telephone conversations, they agreed verbally to a settlement of the years consistent with the examination reports, with additional deductions to be allowed for actual out-of-pocket cash losses once petitioner verified his cash investment in Salisbury Traders. Petitioner told Mrs. Spandau that he was still recovering from a recently fractured wrist, and she agreed to allow him to wait for a few weeks to substantiate his cash investment, until he could regain better use of his hands. Several weeks later, as petitioner was "readying the requested data for submission," Mrs. Spandau phoned petitioner to advise him that there was a problem with the 1980 year with respect to the statute of limitations. During that conversation, Mrs. Spandau said that she would call petitioner after the "problem" was resolved, so that they could complete the verbal settlement. Petitioners were never again contacted by Mrs. Spandau; their next contact from respondent was a statutory notice for the 1981 year issued to them on June 15, 1987. In late July 1987, they next received, from Revenue Agent Silverman of the Holtsville office, the letter stating that the 1980 tax returns had been returned from Appeals, no additional tax liability existed for 1980 because of the expired statute of limitations, and no further action on petitioners' part would be necessary with regard to that return. Petitioners' next communication from respondent was the receipt of the notices of deficiency for 1980 and 1982, which were issued on August 27, 1987.

Respondent does not dispute with any specificity petitioner's recitation of the events prior to the issuance of the statutory notices; respondent's main arguments regarding petitioners' purported protraction of the proceedings center on petitioners' dilatoriness in settling the case after the petitions were filed. Such arguments, however, implicitly

overlook the "position of the United States," as reflected in the statutory notices. Respondent gives lip service to and acknowledges the Second Circuit's opinion in *Weiss,* but he nonetheless focuses his arguments on petitioners' post-petition actions only. Given respondent's failure to refute petitioner's version of the events leading up to the statutory notices' issuance, we accept that the pre-petition events occurred essentially as asserted by petitioner. We think petitioner's behavior and reactions generally were reasonable and appropriate, and that petitioner's failure to substantiate his cash investment before the issuance of the statutory notices was due more to respondent's unilateral acts than to any unreasonable protraction of the proceedings on petitioner's part. Compare *Polyco, Inc. v. Commissioner,* 91 T.C. 963, 968 (1988); *Mearkle v. Commissioner,* 90 T.C. 1256, 1261 (1988).

In that regard, we also think that petitioners exhausted the administrative remedies afforded them prior to the statutory notices' issuance. *Minahan v. Commissioner,* 88 T.C. 492, 503 (1987). Petitioners had filed a protest to the 1980 year upon receipt of the first examination report, and the letter of respondent's own agent, Mr. Silverman, confirms that the 1980 and 1982 tax returns had been sent to respondent's Appeals division. We thus find that, prior to the issuance of the statutory notices, petitioners acted reasonably and availed themselves of all remedies afforded them by respondent.

## Amount of Costs

Having found that petitioners meet all the requirements for entitlement to litigation costs, we now turn to the amount to be awarded. Petitioners request reimbursement for attorney's fees of $21,411 (109.8 hours of attorney time at $195 per hour) plus miscellaneous costs in the amount of $195.23. By our review of billing charges from petitioners' counsel, we summarize the attorney's time as follows:

| Purpose | Hours |
|---|---|
| Preparing 1981 petition | 12.0 |
| Preparing 1980 and 1982 petitions | 15.1 |
| Various phone discussions with petitioner and I.R.S., including mailing of data for substantiation of cash outlay | 5.0 |

| Purpose | Hours |
| --- | --- |
| Responding to formal discovery requests and to respondent's proposed settlement, and filing motion to consolidate ...... | 14.6 |
| Discussion and preparation of agreed settlement............. | 19.0 |
| Motion for litigation costs................................. | 8.3 |
| Response to respondent's objection to litigation costs, and submission of affidavits and details about requested costs............................................... | 35.8 |
| | 109.8 |

As we noted above, we believe respondent was justified in issuing the statutory notice for 1981 to petitioners, and we accordingly allow no attorney's fees for the 12.0 hours spent preparing the 1981 petition. We also above found that respondent's positions in the 1980 and 1982 statutory notices were not substantially justified, and we therefore award attorney's fees for the 15.1 hours spent on the petitions for those years.

Petitioners' counsel spent 38.6 hours on the case during the period after the filing of the petitions and before the filing of the motion. We believe that settlement of the case might have come more quickly and that respondent might not have resorted to formal discovery requests had petitioners verified their actual cash investment earlier than they did. On that basis, as well as our finding that respondent was substantially justified in issuing the 1981 statutory notice, and giving due regard to petitioners' burden of proof (Rule 232(e)), we find that petitioners are entitled to fees for 20 of those 38.6 attorney hours.

Because respondent's positions in the 1980 and 1982 statutory notices were not substantially justified, we think it appropriate for petitioners' counsel to have spent time working on the motion for litigation costs. We therefore award petitioners fees for the 8.3 hours their counsel spent preparing the motion. *Sokol v. Commissioner*, 92 T.C. 760, 767 n. 12 (1989); *Mearkle v. Commissioner*, 90 T.C. 1256, 1262-1263 (1988).

As for the 35.8 hours spent by petitioners' counsel after the filing of the motion and initial supporting memorandum, we do not think it reasonable that all of that additional time was spent, and we decline to impose costs for all those hours on the Government. We need not reach the question whether, as a threshold matter, respondent's position in regard to litigation costs must itself be evaluated. See

*Rogers v. Commissioner,* T.C. Memo. 1987-374. Even if an additional test were appropriate, we would conclude that petitioners were entitled to an award of costs incurred in litigating the fee award issue.

Rule 231(d) provides:

A motion for an award of reasonable litigation costs shall be accompanied by a *detailed* affidavit by the moving party or counsel for the moving party which *sets forth distinctly the nature* and amount of each item of costs paid or incurred for which an award is claimed. [Emphasis supplied.]

Petitioners' motion, original memorandum, and supporting affidavits detailed the nature of their counsel's services only by stating that he had performed 70 hours of work in the matter between August 1, 1987, and November 30, 1988, which was billed to petitioners at $195 an hour. There was no breakdown as to the particulars of how such time was spent or as to any specific dates on which the services were rendered. The supplemental affidavit filed by petitioners' counsel, at the request of the Court, includes what appears to be a computer printout from counsel's billing file. Had a similar document originally been provided with petitioners' motion, and had the factual background set forth in the supplemental memorandum been set forth in so clear a fashion in the original supporting memorandum, we would have been able to reach our conclusions herein without the need for petitioners' counsel to expend an additional 35.8 hours of his time. We appreciate, however, that additional time would have been necessary to include the additional information in the original memorandum, and to review respondent's objections to the motion. Accordingly, bearing in mind petitioners' burden of proof, we award reimbursement for 12 of the 35.8 hours.

We next consider the hourly rate for the 55.4 hours of attorney's fees reimbursement to which petitioners are entitled. Petitioners ask for reimbursement at their counsel's regular rate of $195 per hour. In support of that rate, petitioners offer affidavits from other tax attorneys in New York City stating that the prevailing hourly fee for experienced tax attorneys there is not less than $195 per hour. Petitioners also offer an affidavit from their counsel in

which he states, inter alia, that he is a former trial attorney in respondent's New York City Regional Counsel office.

Section 7430(c)(1)(A)(ii)(III) provides that attorney's fees "shall not be in excess of $75 per hour unless the Court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate." In interpreting section 7430, we bear in mind that "Except to the extent it has waived its immunity, the Government is immune from claims for attorney's fees. Waivers of immunity must be 'construed strictly in favor of the sovereign,' and not 'enlarge[d] . . . beyond what the language requires.' " (Citations omitted.) *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685 (1983). We thus must read section 7430 narrowly, construing any unexpressed allowance of costs as a declination by Congress to waive sovereign immunity for any costs not expressly allowed. See *Ruckelshaus v. Sierra Club, supra; Ewing and Thomas, P.A. v. Heye,* 803 F.2d 613, 616 (11th Cir. 1986); *Arvin v. United States,* 742 F.2d 1301, 1304 (11th Cir. 1984).

In section 7430(c)(1)(A), as applicable herein, clause (ii) includes the general phrase "prevailing market rates for the kind or quality of services furnished," but subclause (III) puts a specific $75 per hour cap on attorney's fees, absent certain specific exceptions. Those specific exceptions are "an increase in the cost of living" and "a special factor."

We first discuss the provision in section 7430(c)(1)(A)(III) that allows the court to determine "that an increase in the cost of living * * * justifies a higher rate." It is apparent that Congress, in amending section 7430 in 1986, desired to make section 7430 conform more closely to the Equal Access to Justice Act (28 U.S.C. sec. 2412) (EAJA). H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 801-802; *Powell v. Commissioner,* 91 T.C. at 682; *Sher v. Commissioner,* 89 T.C. 79, 84 (1987). In amending section 7430 in 1986, Congress revised the provisions of section 7430(c)(1)(A) relating to attorney fees, so as to conform section 7430 with the EAJA provision for attorney's fees—section 2412(d)(2)(A). Included in the 1986 amendment to the attorney's fees provision of section 7430(c)(1)(A) was the enactment of the provisions relating to the $75 hourly cap and "increase in

the cost of living." Under EAJA, the Second Circuit (to which the instant case is appealable) has awarded a litigant attorney's fees in excess of $75, based on the increase in the Consumer Price Index (CPI) since October 1, 1981 (the effective date of the first enactment of EAJA's $75 hourly cap, Pub. L. 96-481, sec. 204, 94 Stat. 2327, 2329, 2330). *Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702 (2d Cir. 1987). Accord *Sierra Club v. Secretary of the Army*, 820 F.2d 513 (1st Cir. 1987); *Hirschey v. F.E.R.C.*, 777 F.2d 1, 5 (D.C. Cir. 1985). Cf. *Chipman v. Secretary of Health and Human Services*, 781 F.2d 545, 547 (6th Cir. 1986) (Sixth Circuit only allows $75 rate to be adjusted for increase in costs of living since 1985, the date of EAJA's reenactment, Pub. L. 99-80 secs. 2, 6, 99 Stat. 184, 186). Following the authority of the Second Circuit, to which this case is appealable, we therefore will adjust above $75 the hourly rate to which petitioners are entitled, so as to reflect an increase in the cost of living. See *Hyatt v. Heckler*, 807 F.2d 376, 383 (4th Cir. 1986) (judicial notice taken of cost of living allowance to increase $75 hourly rate).

As of October 1, 1981, the date at which the Second Circuit begins to adjust the $75 rate for increases in the cost of living, the CPI for all urban consumers (CPI-U)[6] was 279.3, according to page 3 of the CPI Detailed Report— September 1981, published monthly by the U.S. Department of Labor, Bureau of Labor Statistics (CPI Report). Of the 55.4 hours of attorney's time for which we found petitioners entitled to reimbursement, 15.1 were rendered in 1987, 28.3 were rendered in 1988, and 12 were rendered in 1989. The annual average CPI-U for the years 1987 and 1988 was 340.4 and 354.3, respectively—increases of 21.9 percent and 26.9 percent over the October 1, 1981, CPI-U. CPI Report—January 1989, p. 156. Over 90 percent of the 1989 services rendered by petitioner's counsel were rendered in late April and the first half of May, and we award petitioners attorney's fees for that time based on the May 1989 CPI-U of 370.8, a 32.8-percent increase from October 1,

---

[6]Our use of the national CPI-U is not meant necessarily to preclude the use of another measure of the increased cost of living, e.g., a metropolitan area CPI, in another case awarding increased hourly fees based on inflation. Petitioners, however, have not suggested any such other measure.

1981. CPI Report—May 1989, p. 7. Accordingly, the increase in the costs of living entitles petitioners to attorney's fees at the following rates:

|  | Hours | CPI increase since 1981 | Hourly rate | Fees |
|---|---|---|---|---|
| 1987 | 15.1 | 21.9% | $91.43 | $1,380.59 |
| 1988 | 28.3 | 26.9 | 95.18 | 2,693.59 |
| 1989 | 12.0 | 32.8 | 99.60 | 1,195.20 |
| Total | 55.4 |  |  | 5,269.38 |

Next we discuss the other exception to the $75 an hour cap, i.e., "a special factor." Petitioners' sole argument with regard to the appropriate hourly rate appears to be that because $195 is the minimum prevailing rate in their home area, they should be entitled to reimbursement from the Government at that rate. We have stated, however, in *Stieha v. Commissioner,* 89 T.C. 784, 792 (1987), "We presume that Congress was aware that the prevailing hourly rates for tax attorneys in metropolitan areas normally exceed $75. Consequently, there must be a showing of 'special circumstances' warranting a higher award." Thus, the prevailing hourly rate in an area is not a special factor to justify an increased rate under section 7430. Moreover, the $75 cap on hourly rates in subclause (III) is a specific exception to the general allowance in clause (ii) of costs based on "prevailing market rates." In that regard, Congress' use of a $75 cap on hourly rates may be viewed as only a partial waiver of the Government's sovereign immunity because it allows reimbursement for only a portion of the reasonable costs taxpayers in some markets will incur. See *Ruckelshaus v. Sierra Club, supra.* We therefore find that petitioners have not proved their entitlement to a rate higher than the rate presumptively concluded by Congress to be the highest rate at which the Government may reimburse for attorney's fees, i.e., $75 increased by a cost of living factor. Accordingly, petitioners are entitled to litigation costs for 55.4 hours of attorney's services at a total cost of $5,269.38.

Petitioners also ask for reimbursement of $195.23 for other costs. The billing file data show costs for filing three petitions at $60 each, plus other costs totaling $75.23. The $60 difference between the $195.23 total request and the

$255.23 sum of all costs on the billing summary is unexplained, but could relate to the cost of filing one petition in this Court. In any event, we award petitioners only the $60 required to file one combined petition for the 1980 and 1982 years. We see no reason why it was necessary to file two petitions, instead of one combined petition, for those years, and petitioners have not offered one. We also decline to award petitioners any costs for filing a petition to contest the substantially justified statutory notice for 1981.

Petitioners also request reimbursement for costs of "messenger service" and "Federal Express." Petitioners have offered no reason for their attorney's use of messenger service in September and October of 1988 or the use of Federal Express instead of the U.S. Postal Service. Because petitioners have failed to prove the necessity of such costs, we decline to award any litigation costs for those expenses. The billing sheet also includes a charge for photocopying in the amount of $22.73, and we award such amount to petitioners as reasonable litigation costs, thus entitling them to total other costs of $82.73.

*Appropriate orders and decisions will be entered.*[7]

---

[7]Because separate orders and decisions are required in each of the three separate cases consolidated herein, an allocation of the litigation costs must be made among the cases. We will allocate the $60 filing fee award to the case at docket No. 37016-87. Absent any contrary request from the parties, we will allocate the $5,269.38 in attorney's fees and the $22.73 in photocopying costs awarded herein equally between the cases at docket Nos. 37016-87 and 37145-87.