ESTATE OF DOROTHY J. WARREN, DECEASED, RIVER OAKS TRUST COMPANY AND R. CLAY UNDERWOOD, CO-ADMINISTRATORS WITH WILL ANNEXED OF THE ESTATE OF DOROTHY J. WARREN, DECEASED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Warren v. Commissioner
Docket No. 36285-87
United States Tax Court
T.C. Memo 1990-377; 1990 Tax Ct. Memo LEXIS 387; 60 T.C.M. (CCH) 206; T.C.M. (RIA) 90377; July 23, 1990, Filed S. Stacy Eastland, Robert M. Weylandt, and James J. Hartnett, for the petitioner. Rebecca W. Wolfe, for the respondent. SCOTT, Judge. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION This matter is before us on petitioner's motion for award of litigation costs pursuant to Rule 231 and section 7430. [1] *389 We filed our opinion in this case on December 14, 1989, and held for respondent on the only substantive issue which had not been settled prior to trial. [2] Our findings of fact and opinion therein are incorporated herein by this reference. Dorothy J. Warren (decedent) died testate on May 27, 1983. On September 26, 1983, decedent's will was admitted to probate in Probate Court No. 3 of Dallas County, Texas (the Probate Court). The Probate Court ordered that the estate be placed in dependent administration and appointed R. Clay Underwood (Mr. Underwood) and River Oaks Trust Company (River Oaks) as Co-Administrators With Will Annexed (the co-administrators) of decedent's estate. The law firm of Baker & Botts represents River Oaks in its capacity as co-administrator of decedent's estate. On June 14, 1982, approximately 1 year before her death, decedent was divorced from her husband of 30 years, Jasper N. Warren (Mr. Warren). Mr. Warren was a successful businessman who, along with a man named Allan C. King, had acquired numerous interests in oil and gas properties in Texas, Louisiana, and Colorado through a series of partnerships and closely held corporations (hereinafter collectively referred to as the Warren-King entities). In 1981, the Warren-King *390 entities experienced financial difficulties which eventually resulted in their dissolution and restructuring on March 14, 1983. As part of the restructuring, Mr. Warren was forced to undertake or assume large amounts of debt. In accordance with a Marriage Settlement Agreement executed by decedent and Mr. Warren on May 28, 1982, decedent received an undivided 50-percent interest of the community estate's interest in the Warren-King entities and other community property. Under the Marriage Settlement Agreement, decedent received property with an aggregate value of approximately $ 48,000,000 and assumed marital debt totaling $ 10,000,000. Following her death, decedent's estate (which is the petitioner herein) became embroiled in protracted litigation with and between creditors of the estate, the charitable beneficiaries of the estate, the decedent's children, the representatives of decedent's grandchildren , and certain other interested parties (collectively referred to as the litigants). A total of 16 suits were filed with respect to the estate to determine the extent of the estate's indebtedness and to protect or recover the assets of the estate. At various times during the administration *391 of the estate, it was unclear whether the estate was solvent due principally to the assertion by alleged creditors of the estate of over $ 90,000,000 in claims, most of which turned out to be groundless. In addition to the above litigation, the Galveston-Houston Catholic Diocese of the Roman Catholic Churches in the United States (the Catholic Diocese) and St. Dominic's Diocesan Center (St. Dominic's), both of which were charitable beneficiaries under decedent's will, filed a petition for declaratory judgment in which they asked the Probate Court to construe certain provisions in decedent's will. On February 1, 1984, the co-administrators requested an extension of the time (from February 27, 1984 to August 27, 1984) within which to file the estate's Federal estate tax return and pay its estate tax liability. The co-administrators explained that they were experiencing difficulties in compiling the information necessary to file the return and that settlement of the estate involved complex fact questions, many of which would have to be resolved through litigation. The extension request was approved. A second extension request, which recited in detail the difficulties experienced *392 by the estate, was also filed. On August 29, 1984, the co-administrators filed a United States Estate Tax Return (Form 706) for decedent's estate with the District Director of Internal Revenue at Dallas, Texas. The Form 706 did not contain sufficient information from which the estate's Federal estate tax liability could be determined. It contained no entries for total gross estate, total allowable deductions, taxable estate, gross estate tax, net estate tax, etc. Rather, such amounts were stated to be "undetermined" or were left blank. Numerous schedules which detailed some of the assets and liabilities of the estate were attached to the Form 706. Most of the items shown on these schedules were assigned no monetary value. On Schedule J, funeral expenses in the amount of $ 3,855.05 were shown and actual and anticipated administrative expenses in the amount of $ 4,060,211.33 were shown. No amount of estate tax was remitted with the Form 706. By letter dated March 10, 1987, addressed to Mr. Underwood, an estate tax examiner with the Internal Revenue Service Dallas Estate and Gift Tax Group, notified Mr. Underwood that petitioner's Form 706 was being examined. The estate tax *393 examiner requested that the estate provide, by March 27, 1987, a copy of decedent's 1981, 1982, and 1983 income tax returns, a copy of each fiduciary return, a copy of the Marriage Settlement Agreement, a list containing the date of death values for each of the assets reported on the estate tax return, a list of all properties sold subsequent to decedent's date of death as well as accompanying appraisals, and the 1980-1984 financial statements for Hill Petroleum Company, a Warren-King entity. By letter dated March 18, 1987, a partner in the firm of Baker & Botts informed the estate tax examiner that the information which he had requested would be gathered, but probably could not be provided by March 27, 1987, and that, since the estate was in dependent administration, the Probate Court would have to approve any values assigned to the estate's assets. By letter dated June 15, 1987, addressed to the estate tax examiner, all of the requested items, except a list of the values of the assets listed on the estate's returns, were provided. This letter stated that the co-administrators had petitioned the Probate Court for instructions regarding the values of the estate's assets, but that *394 the Probate Court had not yet issued instructions or authorizations. On June 16, 1987, the Probate Court entered an "ORDER AUTHORIZING SETTLEMENT OF CLAIMS BY AND AGAINST THE ESTATE," which directed the co-administrators to settle many of the claims filed by and against the estate. Respondent issued a notice of deficiency in this case on August 14, 1987, in which he determined that there was a deficiency in the estate's estate tax liability in the amount of $ 34,340,734.68. In the notice of deficiency, respondent determined, based partly on the Marriage Settlement Agreement, that the date of death value of decedent's total gross estate was $ 69,071,990.94. Respondent determined that petitioner was not entitled to deduct the $ 3,855.05 in claimed funeral expenses nor the $ 4,064,066.38 in claimed administrative expenses. Finally, respondent determined, again based partly on the Marriage Settlement Agreement, that the estate was entitled to deduct $ 10,831,599.81 as debts of the decedent and thus petitioner's taxable estate was reduced by such amount. On October 27, 1987, petitioner filed a second Form 706 labeled "Supplemental United States Estate Tax Return" (the supplemental *395 Form 706). On the supplemental Form 706, the decedent's "total gross estate" was valued at $ 28,352,519.91. Petitioner claimed $ 25,654,460.34 as "total allowable deductions." The supplemental Form 706 contained specific values for each asset included in decedent's "total gross estate" and the amount of each liability and deduction listed. Among such deductions claimed was a charitable deduction in the amount $ 17,548,947, representing the purported value of the charitable beneficiaries' annuity interest in two charitable annuity trusts. In calculating the value of the annuity interest, the coadministrators, contrary to the language of decedent's will, deducted only 27-1/2 percent of the administrative expenses incurred by the estate from the property passing under decedent's will into the trusts. Consistent with their calculation of the estate's charitable deduction, the co-administrators deducted just 27-1/2 percent of the estate's total administrative expenses, $ 2,034,889.09, in arriving at the estate's "total allowable deductions." They also deducted the $ 3,855.05 in funeral expenses which had been deducted on the original Form 706. The supplemental Form 706 contained *396 a statement to the effect that the estate would deduct the remaining 72-1/2 percent of administrative expenses on the estate's fiduciary income tax returns. This portion of the administrative expenses was deducted on the fiduciary income tax returns filed for the estate. However, no waiver was filed, as required by section 642(g), of the right to deduct such amounts in computing the taxable estate of decedent. According to the supplemental Form 706, the amount of the decedent's "taxable estate" was $ 2,698,059.57 and the total amount of tax due was $ 925,722.33. The co-administrators paid this amount, plus interest on behalf of the estate, at the time they submitted the supplemental Form 706. The petition in this case was filed on November 10, 1987. Petitioner assigned error to respondent's valuation of the assets and liabilities of the estate and to his disallowance of funeral and administrative expenses. Petitioner alleged values for each asset and liability of the estate, as well as the amount of administrative expenses and other deductions of the estate. The values and amounts alleged were the same as those reported on the supplemental Form 706. Respondent filed an *397 answer to the petition on December 29, 1987, in which he denied the assignments of error and denied the values alleged for assets and other amounts alleged. The answer was signed by an Assistant District Counsel in Dallas. By letter dated March 1, 1988, respondent requested that petitioner supply information and documents relating to decedent's estate. The letter contained 41 numbered requests for financial statements, copies of the Settlement and Release Agreement, and documentation relating to the assets and liabilities of the estate as well as the deductions claimed. By letter dated March 29, 1988, respondent submitted to petitioner an additional 47 numbered requests for information and documentation. Among the items requested was documentation showing that the Catholic Diocese and St. Dominic's were qualified charitable organizations at the date of decedent's death. By letter dated May 17, 1988, petitioner supplied much of the information and documentation requested by respondent. In a letter and accompanying memorandum dated July 18, 1988, respondent indicated that, for purposes of computing the estate's charitable deduction, 100 percent of the estate's administrative expenses *398 must be deducted from the property passing under decedent's will into the trusts. The instant case was set for trial at the session of this Court in Dallas, Texas, commencing on September 26, 1988. On September 27, 1988, the parties in this case filed a stipulation of facts in which they agreed that the values and amounts of assets, liabilities, and deductions claimed in the supplemental Form 706 were, for the most part, correct. The only issue involved in this trial was whether, for purposes of calculating the charitable annuity amount and thus the estate's charitable deduction, all administrative expenses must be subtracted from the residuary corpus of the estate which passed into the trusts under the will. We decided this issue for respondent. Estate of Warren v. Commissioner, 93 T.C. 694, 727 (1989). On January 16, 1990, petitioner filed a motion for award of litigation costs in which a claim was made for reasonable litigation costs under section 7430. In the motion, virtually all attorneys' fees and other costs incurred since August 17, 1987, were claimed, including fees and costs which were attributable to the estate's fiduciary income tax matters, *399 preparation of the estate's Texas inheritance tax return, and the gathering of information necessary to and the filing of the estate's supplemental Form 706. Attorneys' fees and costs attributable to the issue tried (i.e., the computation of the estate's charitable deduction) were also claimed. On February 20, 1990, respondent filed his objection to petitioner's motion for litigation costs. By order dated March 26, 1990, this Court ordered that the parties, if possible, file an agreed statement of the portion of the litigation costs claimed by petitioner which relate to the issues on which petitioner prevailed by agreement of the parties, starting on the date the petition in this case was filed and ending on the date that respondent agreed to petitioner's valuation of most of the assets in decedent's gross estate. Pursuant to our order, on April 23, 1990, the parties filed an agreed statement that the services of attorneys required a total of 158.5 hours, that the services rendered by legal assistants, law clerks, and other personnel, required a total of 112.8 hours, and that expenses were $ 2,763.10. Petitioner also filed a supplemental brief and affidavit in support of its motion *400 for litigation costs in which it claimed that the date-of-death value of the estate's assets on the date of the filing of the petition herein was $ 26,114,931, without taking into account the deficiency determined by respondent which was being contested in the petition. Respondent also filed a memorandum in support of his objections to petitioner's motion for litigation costs. OPINION Section 7430 provides that, in the case of any civil proceeding in a court of the United States, including this Court, brought by or against the United States, the "prevailing party" may be awarded reasonable litigation costs. [3]Section 7430(a). A taxpayer is a "prevailing party" only if it establishes: (1) that the position taken by the United States in the proceeding was not substantially justified; (2) that it has substantially prevailed with respect to the amount in controversy or with respect to the most significant issues presented; and (3) that it meets the net worth requirements of 28 U.S.C. section 2412(d)(2)(B) (1988) on the date the petition was filed. Section 7430(c)(2)(A). *401 In addition, in order to qualify for an award of litigation costs, a taxpayer must establish that it exhausted the administrative remedies available to it within the Internal Revenue Service and that it did not unreasonably protract the proceeding. Section 7430(b)(1); section 7430(b)(4). The burden of proving that each of the aforementioned requirements has been met is on the party claiming the award of attorneys' fees. Dixson International Service Corp. v. Commissioner, 94 T.C. , (May 17, 1990) (slip op. at 11); Cassuto v. Commissioner, 93 T.C. 256, 261 (1989); Rule 232(e). *402 Respondent concedes that petitioner substantially prevailed with respect to the amount in controversy and that petitioner exhausted the administrative remedies available to it. In addition, respondent does not contend that petitioner unreasonably protracted any portion of this proceeding. Respondent contends that petitioner has failed to establish that the "position of the United States" in the instant proceeding was not substantially justified. Respondent also contends that petitioner has failed to establish that it meets the net worth requirements of 28 U.S.C. section 2412(d)(2)(B) (1988). It is respondent's position that petitioner is not entitled to recover reasonable litigation costs in this case under section 7430. Whether the position of the United States in the instant case is substantially justified depends on whether respondent's positions and actions were "reasonable" in light of the facts of this case and the applicable legal precedents. Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). *403 We may also consider, among other factors which we find relevant, whether respondent used the costs and expenses of litigation to extract unjustified concessions from petitioner, whether respondent pursued the instant litigation to harass or embarrass petitioner, or whether respondent's pursuit of the instant litigation was politically motivated. H.Rept. 97-404 at 12 (1981); Sher v. Commissioner, supra at 84-85. Under section 7430(c)(4), the "position of the United States" includes not only the litigating position taken by respondent, but also any administrative action or inaction by the respondent's District Counsel and all subsequent administrative action or inaction. In determining whether respondent's position was substantially justified, the reasonableness of respondent's pre-litigation position prior to the time the District Counsel becomes involved in the case is not to be considered. Sher v. Commissioner, 861 F.2d 131, 134 (5th Cir. 1988), affg. 89 T.C. 79 (1987); Dixson International Service Corp. v. Commissioner, 94 T. *404 C. , (May 17, 1990) (slip op. at 14); Gantner v. Commissioner, 92 T.C. 192, 197 (1989), affd. F.2d (8th Cir. 1990). We conclude, based on the record here, that the District Counsel first became involved in the instant case after the filing of the petition. Therefore, we will not consider any of respondent's positions or actions prior to the filing of the petition. Petitioner contends that respondent's post-petition positions were unreasonable in three respects. First, petitioner claims that it was unreasonable for respondent to deny in his answer the asset values and the amount of funeral and administrative expenses alleged in the petition since, according to petitioner, a simple review of the Probate Court file would have revealed more realistic asset values and the payment of the claimed expenses. Second, petitioner claims that it was unreasonable for respondent to request numerous items of information (a total of 88 paragraphs) some of which, according to petitioner, were duplicative, unnecessary, or irrelevant. Finally, petitioner claims that it was unreasonable for respondent to deny petitioner's allegation that it was entitled to a charitable deduction *405 since, according to petitioner, such deduction was clearly allowable and only the amount was in dispute. As noted, the allegations contained in the petition were based on the values and amounts reported on the supplemental estate tax return Form 706 which had been filed on October 27, 1987, after the issuance of the notice of deficiency, more than 3 years after the filing of the original incomplete Form 706, and only approximately 2 weeks before the filing of the petition. Although the supplemental Form 706 and the petition, which were in respondent's possession at the time he filed his answer, described the assets, liabilities, and deductions of the estate and assigned a dollar amount to each, no documents supporting these amounts were attached to either the petition or the supplemental Form 706. The only supporting documents that respondent had in his possession at the time of the filing of his answer were the documents provided by petitioner's representative on June 15, 1987, which included copies of the fiduciary income tax returns and a copy of the Marriage Settlement Agreement. Even though respondent eventually conceded that the date of death value of the assets of the estate *406 were $ 28,352,519.91, respondent had no way of determining this at the time he filed his answer due to the complexities of the estate and his lack of information. Nevertheless, petitioner apparently contends that respondent should have accepted the dollar amounts contained in the petition based solely on bare allegations, rather than denying such amounts until he could obtain supporting documentation through informal requests or formal discovery procedures. Petitioner misapprehends the burden of proof in this case. Petitioner, not respondent, was required to investigate, gather, and present evidence substantiating the asset values and deductions claimed in the petition. Harrison v. Commissioner, 854 F.2d 263, 266 (7th Cir. 1988), affg. a Memorandum Opinion of this Court; Rule 142(a). Petitioner, not respondent, was required to supply a copy of the Probate Court file from which the dollar amounts claimed by petitioner could be verified. The failure of petitioner's representatives to supply substantiating information may have stemmed from the complexities of the estate *407 and the litigation surrounding its value, rather than any misconduct or delay on their part. However, without such information, respondent had no facts at the time his answer was filed on which to base a judgment as to the truth of the allegations in the petition or to decide whether to concede or pursue the issue at trial. Harrison v. Commissioner, supra at 265; Ashburn v. United States , 740 F.2d 843, 850 (11th Cir. 1984). Respondent formally conceded by stipulation all issues in this case, other than the one on which he was sustained at trial, on September 27, 1989. Respondent's counsel states that petitioner's counsel was notified of these concessions on July 26, 1988, just 2 months (approximately) after respondent finally received a large amount of substantiating documents from petitioner and just 7 months (approximately) after the answer was filed. Petitioner does not deny that it was notified of the concessions on July 26, 1988. We conclude that respondent was substantially justified in waiting until he had verified the asset values and deductions alleged in the petition through substantiating documentation before conceding such issues. *408 Harrison v. Commissioner, supra at 265. We also find nothing unreasonable in respondent's informal discovery requests. As noted previously, respondent informally submitted 88 numbered paragraphs to petitioner in which he requested information relating to the estate's assets, liabilities, and deductions. Petitioner contends that much of the information requested was duplicative, unnecessary, or irrelevant because it related to liabilities which, although included on the estate's original Form 706, were not included on the supplemental Form 706. Petitioner also points to respondent's request that petitioner provide documentation that the Catholic Diocese and St. Dominic's were qualified charitable organizations. Informal discovery attempts are not only allowed but are encouraged by this Court. Rule 70(a)(1). While some of the information requested by respondent may have been covered by the supplemental Form 706, given the administrative complexities of the decedent's estate and the copious litigation surrounding its value, we conclude that respondent's discovery attempts in this case under Rule 70(b)(2) were reasonable and were justified since such attempts *409 were designed to ascertain facts having a bearing on an issue which was before the Court. Zaentz v. Commissioner, 73 T.C. 469, 478 (1979). Petitioner did not supply the information which it deemed unnecessary, duplicative, or irrelevant. Respondent did not attempt to force petitioner to respond. For example, with respect to respondent's request that petitioner supply documentation that the charitable beneficiaries were qualified charities, the parties agreed through negotiation that petitioner need not do so with respect to the Catholic Diocese. Petitioner was not required to produce any information with respect to which an objection was raised and, therefore, we do not find respondent's actions to be unreasonable. Finally, we find nothing unreasonable in the fact that respondent denied petitioner's allegation that, "The value of property passing to charity under Decedent's Last Will and Testament was $ 17,548,947." The allegation does not, on its face, assert that petitioner is entitled to any charitable deduction. It merely alleges a value for the amount passing to charity. Thus, respondent did not, as claimed by petitioner, arbitrarily deny that petitioner *410 was entitled to any charitable deduction at all. Respondent merely denied that the amount passing to charity was as alleged by petitioner. This is not particularly surprising since, at the time respondent filed his answer, petitioner had not (as was the case with other allegations in the petition) supplied the supporting documentation from which the amount allegedly passing to charity for Federal estate tax purposes could be substantiated. The amount passing to charity for Federal estate tax purposes (and thus the estate's charitable deduction) was the very issue upon which respondent prevailed at trial. We, therefore, do not find respondent's actions in this respect to be unreasonable either. We conclude that respondent's position and actions in this case were entirely reasonable given the circumstances. We do not find any pattern of harassment nor do we see any political motivations for respondent's pursuit of the instant case. Furthermore, we do not agree with petitioner that respondent was simply searching for a way to justify the deficiency determined in the notice of deficiency. In fact, respondent conceded most of the deficiency prior to trial and prevailed at trial *411 on the only issue which he did not concede. Therefore, we conclude that petitioner is not a "prevailing party" within the meaning of section 7430 because it has failed to establish that the position of the United States in the instant proceeding was not substantially justified. Respondent also argues that petitioner is not a "prevailing party" within the meaning of section 7430 because it has failed to establish that it met the net worth requirements of section 7430(c)(4)(A)(iii) at the time of the filing of the petition herein. However, we need not address this argument since we have concluded that petitioner was not a prevailing party, because it has failed to show that the position of respondent was not substantially justified. We, therefore, deny petitioner's motion for any award of attorneys' fees. An appropriate order will be entered. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code as amended and in effect for the relevant periods, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Estate of Warren v. Commissioner, 93 T.C. 694↩ (1989).
3. Section 7430 was amended in several respects by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub.L. 100-647, sec. 6329(a), 102 Stat. 3342, 3743-3746. These amendments generally apply only to civil tax proceedings commenced after November 10, 1988, one year subsequent to the commencement of the proceedings herein, and thus are not applicable to the instant case. TAMRA, sec. 6329(d), 102 Stat. 3746. However, sec. 1015(i) of TAMRA, 102 Stat. 3571, amended sec. 7430(c)(2)(A)(iii) to delete any reference to the net worth requirements of 5 U.S.C. sec. 504(b)(1)(B) (1988) and to refer instead to the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B) (1988). This amendment is effective as if included in the Tax Reform Act of 1986 (TRA 1986), Pub.L. 99-514, 100 Stat. 2085. Therefore, with this one exception, the instant proceeding is governed by sec. 7430↩ as amended by TRA 1986. TRA 1986 applies to any proceeding commenced after December 31, 1985. TRA 1986, sec. 1551(h)(1), 100 Stat. 2753.