T.C. Memo. 1998-406

UNITED STATES TAX COURT

PHILLIP LEE ALLEN AND CAROLYN F. ALLEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 243-97.                          Filed November 13, 1998.

<u>Joseph E. Mudd</u> and <u>Jeri L. Gartside</u>, for petitioners.

<u>Andrew H. Lee</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined a deficiency in petitioners' Federal income tax for 1991 of $39,697 and an accuracy penalty in the amount of $7,939.

The issues for our consideration are:  (1) Whether petitioners are entitled to nonrecognition treatment on the $130,000 settlement payment received from Allstate Insurance Co.

under section 1033;[1] and (2) whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a).

Petitioners contend that the $130,000 settlement payment was for damage to petitioners' home, was used for repairs, and therefore should not be recognized as income in accord with the section 1033(a) involuntary conversion rules. Respondent counters that section 1033 is inapplicable because the gain realized by petitioners was not the result of an involuntary conversion.[2]

### FINDINGS OF FACT

The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Phillip and Carolyn Allen, petitioners, have resided, at all pertinent times, in Orange, California. In 1987, the beginning of what would become extensive damage in petitioners' home occurred. The first indication of the problem was that the sliding glass doors would no longer close. Then the cupboard doors were difficult to open. The kitchen cabinets started to

---

[1] Unless otherwise stated, all section references are to the Internal Revenue Code in effect for the taxable year in issue.

[2] Respondent also advanced arguments concerning sec. 104 because of petitioners' references to that section in their briefs. Petitioners' reference to the income exclusion principle of sec. 104 was merely by way of an analogy as a means to test the nature of the payment in order to show compliance with a sec. 1033 requirement. For this reason, we address only the parties' sec. 1033 arguments.

show separation, and the kitchen tiles cracked. The putty holding the large living room windows began to ooze out around the glass as if being compressed. Tile in other areas of the home cracked, as did the shower. The drywall nails popped out from the hallway wall. Concrete in other areas of the property also cracked and separated, including the garage floor, driveway, patios, and walkways. The garage door would no longer close properly. The fence, which had already been realigned once, began leaning and separating, and the gate could no longer close or open properly.

Feeling that the floor inside the home was also "separating", petitioners pulled the carpet back and revealed deep cracks in the foundation. The slab had cracked due to a 3-inch vertical shift in the foundation. Because the cracking of the slab foundation had damaged the radiant heating pipes laid within, petitioners' heating system no longer functioned and needed complete replacement. The damage to the foundation was so severe that the house had to be lifted and placed on Perma-jacks to stabilize it. When this was done, the kitchen walls, countertops, and flooring were crushed by the movement and had to be rebuilt.

Petitioners' neighbor, John Lane (Lane), had caused the damage when he removed a lateral support berm between the properties. Petitioners discussed the damage with an engineer,

then contacted their homeowners' insurance company, Allstate Insurance Co. (Allstate), to make a claim for coverage. Allstate advised petitioners that they were covered for property damage caused by a third party.

The first repair estimate was approximately $102,000 to $104,000. The repair costs, however, increased as further damage occurred and was discovered. Due to disagreements with Allstate regarding the repair cost estimates and Allstate's alleged delay, petitioners hired an attorney to aid in further negotiations with Allstate.

In July 1988, petitioners filed suit against Allstate for damages, including punitive damages, for Allstate's alleged breach of contract and breach of the statutory duty of good faith and fair dealing under the California Insurance Code. The parties then agreed to go through the arbitration process provided for in the homeowners' policy. In September 1990, the arbitrator submitted an interim award. At that time, the arbitrator ruled that petitioners' home's replacement cost value was $128,084. He ordered Allstate to pay that amount minus the cash discount and credit for payments previously made. He also found that neither Allstate nor its employees had acted in bad faith and ordered that further litigation on this matter should cease. By stipulation, the parties agreed that no final award would be entered at that time. Allstate proceeded to pay

petitioners approximately $102,000 of the interim award. Before final judgment had been entered, petitioners filed a petition to vacate the interim award and requested a rehearing on the matter.

In April 1991, petitioners and Allstate entered into a general release and settlement agreement, which provided that, as settlement for the action filed by petitioners, Allstate would pay petitioners an additional $130,000. In return, petitioners agreed to release Allstate and its related entities from all claims and liabilities "including claims for bad faith breach of contract or statutory violations under law." Petitioners also agreed to pay Allstate any moneys received under any other claim of loss for this damage, up to $128,084.

At the settlement conference preceding the agreement, the parties discussed the revised estimate of repair costs, but did not discuss punitive damages other than petitioners' agreement to forgo punitive damages if the settlement amount was close to the actual cost of repairs. The repair estimate at that time was $236,000, though the actual cost was greater.

While petitioners were pursuing their claim against Allstate, they also filed a complaint against Lane for the damage he caused by removing the berm. In order to protect its subrogation rights, Allstate filed a lien against any possible award in the Lane litigation. The lien amount was approximately $85,000, though Allstate later accepted $75,000 in satisfaction

of the lien. Out of the $112,000 eventually awarded in the Lane litigation, petitioners received the net amount of $37,000.

In 1991, petitioners reported the casualty loss they suffered through the damage to their property and the reimbursement they received for repairs. Petitioners reported that they received a total of $269,467.20, for which they claimed nonrecognition treatment under section 1033. This figure included the $102,467.20 received from Allstate before the settlement, the $130,000 settlement payment and $18,500 from each of Lane's insurers, State Farm, and coincidentally, Allstate. Respondent sent petitioners a notice of deficiency, stating that the $130,000 settlement payment was taxable. Respondent also determined that the income increase caused purely mathematical adjustments to deductions and exemptions taken by petitioners. Respondent determined petitioners also owed a $7,939 accuracy-related penalty under section 6662(a) for their failure to include the $130,000 payment in income. Petitioners dispute the income tax deficiency and penalty.

                              OPINION

The sole adjustment under consideration involves the question of whether petitioners are entitled to use the nonrecognition provisions of section 1033. All other adjustments and our consideration of the penalty depend on the outcome of this primary issue.

Gain or loss realized on the disposition of property generally must be recognized as taxable under section 1001(c). Disposition of property includes the involuntary conversion of property through condemnation and damage. Rosenthal v. Commissioner, 416 F.2d 491, 498 (2d Cir. 1969), affg. 48 T.C. 515 (1967). Section 1033 provides an exception, allowing nonrecognition of gain realized under specific circumstances.

To qualify for the section 1033 nonrecognition, the gain realized must have been: (1) Compensation for the involuntary conversion of the taxpayer's property and (2) expended within a specified period of time for the replacement of the converted property with similar property. Sec. 1033(a)(2)(A) and (B).

Here, the parties disagree about the $130,000 received in settlement of petitioners' claim against Allstate. Petitioners argue that the settlement proceeds were compensation for the involuntary conversion of their property and that the compensation was expended for repairs to restore the house to its original condition. Respondent argues that the payment cannot qualify for section 1033 treatment because it was not compensation for a property loss nor was it used solely to replace the involuntarily converted property. If the payment was to satisfy a claim for punitive damages, that portion would not be "compensation" as required by section 1033. See Lukhard v. Reed, 481 U.S. 368, 389 (1987) ("Punitive damages * * * are a

windfall * * * rather than compensation."). Because the amount paid was in settlement of multiple claims, we must first determine the character or nature of the settlement.

When an amount is paid in settlement of litigation, we must ascertain the specific claims, if any, for which the settlement was paid. Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997). Where the settlement language does not delineate which claims are being settled, the most important factor in determining the nature of a settlement payment is the payor's intent in making the payment. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33. If a payor's intent cannot be discerned from the settlement agreement, all the facts and circumstances surrounding the case should be considered. Robinson v. Commissioner, 102 T.C. 116, 127 (1994), affd. in part, revd. in part and remanded 70 F.3d 34 (5th Cir. 1995). Specific factors to consider include the details of the underlying proceeding and the allegations, responses, and arguments contained in the pleadings of that proceeding. Id.

Petitioners testified that the primary discussion at conference was about the cost to repair the property, not about the possibility of punitive damages. Petitioners' counsel in the Allstate insurance controversy testified that the only reference to punitive damages made in settlement negotiations was

petitioners' willingness to give up any claim for such in return for settlement close to the amount of actual damages. At that time, actual damages were estimated at $236,000,[3] and the amount to be paid to petitioners, including the $102,000 paid pursuant to the earlier arbitration and the proposed $130,000 settlement, was $232,000. Allstate's counsel corroborated that testimony by stating that the money was paid to settle the claim for the cost to repair the property and that no amount was paid to settle any punitive damage claim. For this reason, we find that Allstate paid petitioners with the intent to compensate them, under their homeowners' policy, for actual damages incurred in the involuntary conversion of their property.

The second prong of nonrecognition of gain under section 1033 is that the money must be spent to replace the converted property with similar property. Sec. 1033(a)(2)(A). The funds may also be used to restore a converted property "so that it could be used in the same manner as it was used prior to the * * * [involuntary conversion]." Rev. Rul. 67-254, 1967-2 C.B. 269, 270 (approving of the use of conversion compensation to rearrange existing facilities and build a new building on the remaining property after conversion); see also Rentz v.

---

[3] The actual cost of repairs was more than the $269,467.20 petitioners eventually received in connection with this loss. Respondent never questioned petitioners' treatment of the additional $37,000 payment from the Lane litigation.

Commissioner, T.C. Memo. 1977-13 (citing Rev. Rul. 67-254, supra, with approval and allowing section 1033 treatment of conversion compensation funds used to construct a property similar to the converted property).

Respondent has attempted to attack petitioners' use of the funds received from Allstate by arguing that petitioners made improvements rather than replacements. Respondent first pointed out that petitioners replaced their Formica countertops with Corian, a more expensive material. However, petitioners explained that they were able to buy the Corian at cost so that it was less expensive than Formica. Respondent then alleged that petitioners had unnecessarily replaced trees on their property with the settlement proceeds. Petitioners countered, showing that the trees had to be moved due to the placement of the new retaining wall. Respondent then attempted to show that petitioners used the proceeds to replace clear glass with colored, but petitioners paid the $300 to color the glass out of their own pockets. Finally, respondent argued that petitioners had introduced air conditioning to the house though it had not previously been air conditioned. There is no cost breakdown of the $4,156.75 paid to replace the entire heating system and to add air conditioning. However, even if we were to assume that half of that amount was attributed to adding air conditioning, it would be less than 1 percent of the total estimated repair cost.

Petitioners have shown that the funds received from Allstate were used, in substantial part, to restore their property to the original condition and though some enhancements were made, in a relative sense, they were de minimis.  Petitioners' actions fulfill the use of funds requirement of section 1033.  See <u>Davis v. United States</u>, 589 F.2d 446 (9th Cir. 1979).

Because petitioners have met both requirements of section 1033 and have chosen not to recognize the $130,000 payment received from Allstate in settlement of their homeowners' insurance claim as taxable income, we hold for petitioners.  Due to our holding on the income tax deficiency, the penalty is not applicable.

In light of the foregoing,

<u>Decision will be entered for petitioners.</u>