T.C. Memo. 2002-302

UNITED STATES TAX COURT

PHILLIP LEE ALLEN AND CAROLYN F. ALLEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 243-97.                    Filed December 11, 2002.

Ps were successful in this Court in showing that a
$130,000 payment received in settlement of an insurance
claim was not for punitive damages and that any gain
realized would not be recognized under sec. 1033,
I.R.C.  Ps seek to recover litigation costs under sec.
7430, I.R.C.  The parties disagree about one of the
prerequisites to recovery--whether Ps exhausted their
administrative remedies before the Internal Revenue
Service.  Sec. 7430(b)(1), I.R.C.; sec. 301.7430-
1(b)(2), Proced. & Admin. Regs.

Following the examination, Ps', in the Appeals
conference, argued that repair costs exceeded the total
insurance recovery so that no portion was attributable
to punitive damages.  R contends that Ps, in order to
have exhausted their administrative remedies, should
have submitted additional information to the Appeals
officer.  Some of the information was in existence and
some was not available to Ps at the time of the Appeals
conference.

Held:  Ps exhausted their administrative remedies and are entitled to litigation costs.  Held, further, sec. 7430(b)(1), I.R.C.; sec. 301.7430-1(b)(2), Proced. & Admin. Regs., interpreted.

Joseph E. Mudd and Jeri L. Gartside, for petitioners.

Louis B. Jack, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  In this opinion, the third one issued in this case,[1] we consider whether petitioners exhausted their administrative remedies so as to be entitled to recover costs and fees under section 7430.[2]

Prior History

In our first opinion, Allen v. Commissioner, T.C. Memo. 1998-406, we found that a payment received by petitioners was not paid by the insurance company to settle petitioners' claim for punitive damages.  We also held that petitioners were entitled to nonrecognition treatment under section 1033 with respect to any

---

[1] See Allen v. Commissioner, T.C. Memo. 1998-406; Allen v. Commissioner, T.C. Memo. 1999-118.

[2] All section references are to the Internal Revenue Code, in effect when the petition was filed, and all Rule references are to this Court's Rules of Practice and Procedure, unless otherwise indicated.

gain realized in connection with the settlement payment.[3]  After
their success in litigation, petitioners filed a motion seeking
to recover $46,419.11 of administrative and litigation costs
under section 7430.[4]  In the second opinion, <u>Allen v.
Commissioner</u>, T.C. Memo. 1999-118, we decided that respondent's
position was substantially justified under the facts and
circumstances of this case.  Accordingly, petitioners' motion for
litigation costs (attorney's fees) was denied.

Petitioners appealed the denial of their motion, and the
Court of Appeals for the Ninth Circuit, in an unpublished
opinion, held as follows:

> We affirm that part of the tax court's determination
> that the respondent was reasonably justifiable in
> believing that the award was taxable, and accordingly
> that attorney fees incurred by the taxpayer through the
> pretrial discovery and negotiating period were not
> reimbursable.  It was, however, an abuse of discretion
> to deny reimbursement of attorney fees actually
> incurred by the trial, which should have been abandoned
> by the Commissioner when all parties knew, three days
> before trial, that the Commissioner's witness had
> recanted and that the [C]ommissioner could not
> reasonably expect to prevail in the ensuing trial.
>     Accordingly, the order appealed from is vacated and the
> cause is remanded to the Tax Court to determine, (1) whether
> the taxpayers have otherwise satisfied the requirements of
> section 7430 with respect to exhaustion, and not
> unreasonably protracting the litigation, and (2) if the
> parties do not agree on the amount due for the costs of

---

[3] Because our holding did not result in an underpayment of
tax, we did not have to consider the penalty determined by
respondent under sec. 6662(a).

[4] Petitioners were also seeking additional attorney's fees
incurred to pursue the motion.

trial, to fix and award a reasonable sum. [Allen v. Commissioner, 246 F.3d 672 (9th Cir. 2000).]

The holding of the Court of Appeals for the Ninth Circuit limits any recovery of costs by petitioners to those incurred during the period that began 3 days before trial. Because this Court decided that respondent's position was substantially justified, we did not have to consider the other prerequisites to recovery of litigation costs under section 7430.[5] The only requirement of section 7430 that remains in controversy[6] is whether petitioners exhausted their administrative remedies as required by section 7430(b)(1). See also sec. 301.7430-1(b)(2), Proced. & Admin. Regs.

## FINDINGS OF FACT[7]

Petitioners' residence was damaged by a neighbor's removal of soil supporting the foundation under petitioners' residence. Petitioners' insurance claim ended in disagreement, and suit was filed against the insurance company. In their pleading, petitioners sought recovery on several grounds, including the

---

[5] A taxpayer's failure to meet any of the requirements of sec. 7430 is fatal to their claim for litigation costs.

[6] There is no remaining controversy with respect to the amount of fees petitioners are entitled to if we decide that they did exhaust their administrative remedies.

[7] The parties' stipulation of facts is incorporated by this reference. To the extent relevant, our findings in Allen v. Commissioner, T.C. Memo. 1998-406, and Allen v. Commissioner, T.C. Memo. 1999-118, are incorporated herein.

claim that the insurance company had acted in bad faith (punitive damages).

After an arbitrator appraised the damage at $128,084, the insurance company paid petitioners $102,000 during 1990. Following negotiations, a global settlement was reached, and the parties' settlement agreement contained the statement that all of petitioners' claims, including the one for "bad faith", were being settled. As part of that 1991 settlement, the insurance company paid petitioners an additional $130,000, which was intended to be in full settlement of petitioners' claims against the insurance company. Following the final settlement, petitioners amended their 1991 joint income tax return in order to claim a $37,852 casualty loss and seek a $5,821 refund. In support of their refund claim, petitioners' relied on the casualty loss provisions of section 165.

Petitioners' 1991 tax return was examined by the Internal Revenue Service. The sole focus of the examination was the $130,000 payment received during 1991. Petitioners' representative, an enrolled agent, argued that the cost to repair the residence exceeded the total amount received from the insurance company, so that no portion of petitioners' settlement recovery could have been a payment for punitive damages.

During the examination, the enrolled agent presented a March 28, 1995, letter, to the examining agent. The letter was from

the attorney who represented petitioners in the suit against the insurance company. The letter contained a list of checks paid to petitioners in the total amount of $269,467.20 and the attorney's conclusion that "The appraiser's award was $128,084. Therefore $25,616.80 of the $130,000 could logically be for damages due to the removal of the berm with the remainder ($104,383.20) being bad faith".

In a January 23, 1996, letter, to the examining agent, petitioners' attorney in the insurance case attempted to recant his earlier letter, stating that, notwithstanding his March 28, 1995, letter, the settlement payment was for neither bad faith damages nor punitive damages. In addition, the enrolled agent wrote to the examining agent reiterating that the attorney's "bad faith" characterization was a mistake. Despite the attempts to correct the attorney's statement, the examining agent concluded that $104,000 of the $130,000 payment from the insurance company was for punitive damages and was therefore income taxable to petitioners for 1991.

Further, although petitioners' claim for refund of 1991 tax relied on the casualty loss provisions of section 165, during the examination petitioners argued that some injury or sickness was caused by the insurance company's actions. Under this argument, petitioners contended that the $130,000 was excludable as payment for physical injury under section 104.

Following the examination, petitioners hired a tax lawyer to represent them and to proceed to Appeals for further consideration of the examining agent's findings. The lawyer engaged by petitioners was qualified in litigation and tax issues, and he assigned a law clerk to represent petitioners' interests before Appeals.

The law clerk and the Appeals officer focused upon the examining agent's findings; i.e., the question of whether the settlement was for punitive damages. The law clerk argued that no portion of the $130,000 settlement was attributable to punitive damages. As support for this argument, the law clerk attempted to show that the total amount received from the insurance company was needed to repair petitioners' residence. The documents shown to the Appeals officer included receipts for repair to petitioners' residence and the insurance settlement documents. During consideration by Appeals, petitioners conceded that they were not entitled to exclude any portion of the settlement recovery under section 104.

The Appeals officer concluded that petitioners had not shown that the $130,000 recovery was not attributable to taxable punitive damages. The Appeals officer's conclusion was based on the examiner's report, the underlying documents indicating that petitioners were seeking punitive damages, and the insurance settlement document referencing punitive damages. The Appeals

officer was also aware of the initial letter from the attorney who represented petitioners against the insurance company containing the statement that $104,000 of the $130,000 was for "bad faith". Although the primary focus was the question of punitive damages, the Appeals officer's report also contained some discussion of section 1033.

Following the Appeals conference, petitioners wrote to the Appeals officer explaining, a second time, that they spent more on repairing their residence than was received from the insurance company. In that same letter, petitioners cited section 165 and sections 1.165-7(a)(2)(ii) and 1.123-1, Income Tax Regs. In response to petitioners' letter, the Appeals officer explained that the issue in controversy was whether any portion of the $130,000 received represented taxable punitive damages. In that same letter, the Appeals officer acknowledged that the cost of repairs could be used to determine a decrease in fair market value. The Appeals officer restated the conclusion that the $130,000 was paid for punitive damages and that petitioners' pleading and the insurance settlement agreement contained statements to the effect that petitioners were seeking and/or settling punitive damage claims.

Petitioners, in response to the Appeals officer, requested that a notice of deficiency be issued so that the matter would be considered by respondent's attorneys. A notice of deficiency

issued, and a petition was filed with this Court during January 1997. In the pretrial setting, petitioners' attorney advanced the same argument--that the settlement payment was not for punitive damages because the total amount of the payments was insufficient to cover the cost to repair the damage to the residence.

A substantial portion of the trial preparation by petitioners' attorneys occurred approximately 1 year after the Appeals conference and during the 3-month period immediately preceding the trial. During their preparation for trial, petitioners' attorneys obtained the insurance company's files, and they contacted the attorney who represented the insurance company. Based on the information procured in preparation for trial, petitioners developed evidence showing that the insurance company did not intend any part of the $130,000 as payment for petitioners' claim that the company had acted in bad faith.

Petitioners' attorney's billable time, when divided into three periods representing the time in Appeals, the pretrial period before extensive preparation, and the 3 months preceding trial, is reflected in the following comparative schedule:

| Case pending in | Time period | Billable amount | Percentage |
|-----------------|-------------|-----------------|------------|
| Appeals | Sept.-Dec. 1996 | $1,848 | 5.2 |
| Tax Court | Jan.-Dec. 1997 | 5,884 | 16.4 |
| Tax Court | Jan.-Mar. 1998 | 28,147 | 78.4 |
| Totals | | 35,879 | 100.0 |

OPINION

We consider here, on remand from the Court of Appeals for the Ninth Circuit, whether petitioners meet the requirements of section 7430 so as to be entitled to recover a portion of their litigation costs. In an earlier opinion, Allen v. Commissioner, T.C. Memo. 1999-118, we held that respondent's position in the proceeding was substantially justified. Under our holding, petitioners were not entitled to administrative or litigation costs, and, accordingly, there was no need to decide whether the remaining section 7430 requisites for recovery had been met. The Court of Appeals for the Ninth Circuit reversed our holding to the extent that the Court of Appeals held that respondent's position in the proceeding ceased to be substantially justified beginning 3 days before the trial. The parties have resolved all but one of the requirements necessary for the recovery of litigation costs.[8]

The question that remains in dispute is whether petitioners exhausted their administrative remedies within the Internal

---

[8] Sec. 7430(b) and (c) provides that prevailing parties, to recover litigation costs, must establish that: (1) They exhausted available administrative remedies; (2) they substantially prevailed in the controversy; (3) the position of the United States in the proceeding was not substantially justified; (4) they meet certain net worth requirements; (5) they did not unreasonably protract the proceeding; and (6) the amount of costs is reasonable. Failure to meet any of the requirements will defeat some part or all of a taxpayer's recovery of litigation costs.

Revenue Service.  Sec. 7430(b)(1).  In order to exhaust administrative remedies, section 301.7430-1(b)(2), Proced. & Admin. Regs., requires "participation" in an Appeals conference. The parties dispute whether petitioners' representative "participated" in an Appeals conference within the meaning of the statute and regulations.  The question of what constitutes "participation" under section 7430 is one of first impression in the context of an Appeals conference held prior to the issuance of a notice of deficiency.

Section 7430(b)(1) contains the general requirement that "the court * * * [must decide] that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service."  The Secretary has explained and interpreted the "exhaustion" requirement, as follows:

> Exhaustion of administrative remedies.  (a)  In general.  Section 7430(b)(1) provides that a court shall not award reasonable litigation costs in any civil tax proceeding under section 7430(a) unless the court determines that the prevailing party has exhausted the administrative remedies available to the party within the Internal Revenue Service.  This section sets forth the circumstances in which such administrative remedies shall be deemed to have been exhausted.
>
> (b) Requirements.  (1) In general.  A party has not exhausted the administrative remedies available within the Internal Revenue Service with respect to any tax matter for which an Appeals office conference is available under §§ 601.105 and 601.106 of this chapter (other than a tax matter described in paragraph (c) of this section) unless--

(i)   The party, prior to filing a petition in the Tax Court or a civil action for refund in a court of the United States (including the Court of Federal Claims), participates, either in person or through a qualified representative described in § 601.502 of this chapter, in an Appeals office conference; or

*    *    *    *    *    *    *

(2)  <u>Participates</u>.  For purposes of this section, a party or qualified representative of the party * * * participates in an Appeals office conference if the party or qualified representative <u>discloses to the Appeals office all relevant information regarding the party's tax matter to the extent such information and its relevance were known or should have been known to the party or qualified representative at the time of such conference</u>.  [Emphasis supplied.]

Sec. 301.7430-1(a) and (b), Proced. & Admin. Regs.

In this case, the question of whether petitioners' administrative remedies were exhausted depends upon whether they "participated" in an Appeals conference.  In common parlance, petitioners, through their representatives, participated in an Appeals office conference.[9]  Respondent, however, relying on the above-quoted definition of "participates" in section 301.7430-1(b)(2), Proced. & Admin. Regs., contends that petitioners did not exhaust their administrative remedies.  Therefore, the narrower question we must decide is whether petitioners disclosed "to the Appeals office all relevant information * * * to the

---

[9] The term "participate" generally means to take part in some activity with others.  Webster's Third New International Dictionary 1646 (1986).

extent such information and its relevance were known or should have been known * * * at the time of such conference." <u>Id.</u>

In an earlier case, concerning whether a taxpayer participated in an Appeals conference, we held that the requisite participation was present even though the taxpayer "failed to answer all of the questions and to supply all of the * * * documents [requested by the Appeals officer]." <u>Rogers v. Commissioner</u>, T.C. Memo. 1987-374. The taxpayer's attorney in that case had provided some answers to the Appeals officer's questions, and, in order to avoid further costs, made an offer of settlement, to which the Appeals officer made a counteroffer.

The definition of the term "participates", as set forth in section 301.7430-1(b)(2), Proced. & Admin. Regs., was avoided in <u>Rogers</u> because the Appeals conference took place after the issuance of the notice of deficiency. In <u>Rogers v. Commissioner</u>, <u>supra</u>, the Court looked to section 301.7430-1(f), Proced. & Admin. Regs.,[10] which contains exceptions to the requirement that

---

[10] At the time relevant to <u>Rogers v. Commissioner</u>, T.C. Memo. 1987-374, the requirement was set forth in paragraph (f) of sec. 301.7430-1 Proced. & Admin. Regs. Under the regulation at that time, the definition of "participates" was "For the purposes of this paragraph," which was limited to pre-petition Appeals conferences. Accordingly, the Court in <u>Rogers v. Commissioner</u>, <u>supra</u>, distinguished situations where the conference occurred after the issuance of a notice of deficiency and filing of a petition. The revised version of that regulation is currently in sec. 301.7430-1(b)(2) and uses the phrase "For purposes of this section". Accordingly, the pre- or post-petition distinction of <u>Rogers v. Commissioner</u>, <u>supra</u>, may no longer pertain.

a taxpayer exhaust administrative remedies. That subsection provided that if no Appeals conference is made available to a taxpayer prior to issuance of a notice of deficiency and the taxpayer does not refuse to participate in an Appeals conference during docketed status, the taxpayer will be treated as having exhausted administrative remedies. Accordingly, Rogers was not based on the regulatory definition of the term "participates" as contained in sec. 301.7430-1(b)(2), Proced. & Admin. Regs.

The definition of the term "participates" in the (b)(2) paragraph of the regulation requires that a taxpayer provide the Appeals officer with information that is relevant at the time of the conference. Accordingly, the question of whether a taxpayer has supplied relevant information depends upon the parties' positions and the factual development of the case at the time of the Appeals conference. Our decision as to whether there was "participation" must therefore focus on what information may be relevant at the time and in the context of an Appeals conference. In that regard, theories or evidence subsequently developed by the parties are not necessarily relevant to the controversy as it existed at the time of the Appeals conference.

To better understand what information may be relevant at an Appeals conference, we consider the overall purpose or goal of section 7430 and the specific purpose of an Appeals conference.

Section 7430 was enacted to permit taxpayers to recover their litigation costs if they prevail in the litigation. To some extent, the enactment of section 7430 was intended to encourage the Internal Revenue Service to take a reasonable approach to settlement and/or litigation. The House report for section 7430, which was enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, contains the following explanation:

> The committee believes that taxpayers who prevail in civil tax actions should be entitled to awards for litigation costs and attorneys' fees up to $50,000 when the United States has acted unreasonably in pursuing the case. _Fee awards in such tax cases will deter abusive actions or overreaching by the Internal Revenue Service and will enable individual taxpayers to vindicate their rights regardless of their economic circumstances_. [Emphasis supplied.]

H. Rept. 97-404, at 11 (1981).

Interrelated with and complementary to that goal, Congress required that taxpayers exhaust their administrative remedies. The exhaustion of taxpayers' administrative remedies is intended to ensure that the Commissioner will have an opportunity to evaluate the quality of taxpayers' positions. In addition, the exhaustion requirement is intended to prevent taxpayers from intentionally presenting superficial information merely to enable the recovery of costs under section 7430(b)(1). Accordingly, the exhaustion requirement is integrally tied to the question of whether the Commissioner's position is justified.

The legislative history for the initial enactment of section 7430 contains the explanation that the exhaustion of the administrative remedies provision was

> intended to preserve the role that the administrative appeals process plays in the resolution of tax disputes by requiring taxpayers to pursue such remedies prior to litigation. A taxpayer who actively participates in and discloses all relevant information during the administrative stages of the case will be considered to have exhausted the available administrative remedies. Failure to so participate and disclose information may be sufficient grounds for determining that the taxpayer has not exhausted administrative remedies and, therefore, is ineligible for an award of litigation costs.

H. Rept. 97-404, supra at 13. Finally, section 7430 was not intended "to permit awards for litigation costs which the taxpayer could have reduced or avoided through full disclosure of all relevant facts." Id. at 15.

Accordingly, section 7430 was intended to motivate respondent to consider and react reasonably to taxpayers' evidence and arguments. Consistent with that purpose is the regulatory requirement that taxpayers provide respondent with relevant information supporting their position. Obviously, if the theories and/or information presented to Appeals is irrelevant, without substance, or unsupportable, the taxpayer will not have exhausted administrative remedies and will not likely be a prevailing party within the meaning of section 7430. Triplett v. Commissioner, T.C. Memo. 1998-313. As a result, such a taxpayer will not be entitled to recover litigation costs.

Additionally, in such situations, respondent's position in the proceeding will likely be reasonable or justified so as to preclude the recovery of administrative or litigation costs.

The purpose or goal of Appeals has been generally described in the following global statement of the Appeals mission:

> The Appeals mission is to resolve tax controversies, without litigation, on a basis which is fair and impartial to both the Government and the taxpayer and in a manner that will enhance voluntary compliance and public confidence in the integrity and efficiency of the Service. * * *

4 Administration, Internal Revenue Manual (CCH), sec. 8.1.3.2, at 27,037.[11]

In this context, we consider the facts in the case before us. The parties' positions and the information available to them in this case continued to develop throughout the administrative process and until trial. Petitioners were examined concerning whether the $130,000 payment they received was paid to settle claims for punitive damages. Petitioners, through their

---

[11] The same perspective is shared by legal commentators, as reflected in following commentary about the Appeals process:

> The Service encourages taxpayers who disagree with actions by district offices, such as adjustments in their tax liability, to resolve their disagreements through administrative appeal. The use of negotiation and settlement, rather than court litigation, is intended to minimize expenditures of time and money by the government and taxpayers alike. * * *

Saltzman, IRS Practice and Procedure, par. 9.01, at 2 (2d ed. 1991).

representative, an enrolled agent, contended that the entire insurance recovery was used to repair their residence, so that no part was attributable to punitive damages. Petitioners, in their amended return, had taken the position that the amount received was a casualty loss under section 165. It also appears that, at the examination, petitioners argued that the $130,000 was not taxable because it was due to personal injury within the meaning of section 104. Ultimately, the examiner concluded that $104,000 of the $130,000 payment was received in settlement of petitioners' claim for punitive damages.

After the examination was complete, petitioners hired a law firm to seek consideration of the examiner's findings by Appeals and to attempt settlement of the controversy. They attempted to show that the cost of repairing their residence exceeded the total payments received from the insurance company. Petitioners, by using this approach, hoped to convince the Appeals officer that no part of the settlement payment could have been for punitive damages. Petitioners chose this approach after evaluating the available evidence and balancing the viability of their position at the Appeals conference with the much larger cost of obtaining information from third parties. Petitioners' approach to settlement did not result in an agreement with the Appeals officer. The Appeals officer concluded that the $130,000 was received in settlement of petitioners' claim for punitive

damages.  The Appeals officer also considered the application of section 1033 to the circumstances of petitioners' facts.

Accordingly, petitioners were forced to decide whether to proceed to trial.  Approximately 3 months prior to trial, petitioners proceeded to procure information from third parties that would show that the insurance company's payment was not intended to settle petitioners' claim for punitive damages.[12]  A few days before trial, respondent's attorney became aware that the insurance company's lawyer would testify that the $130,000 payment was not for "bad faith" or punitive damages.  Respondent's attorney had expected that the insurance company's lawyer would testify otherwise.  In spite of that newly discovered information, respondent proceeded to trial, and, ultimately, respondent's position in the litigation was held to be unjustified, beginning 3 days before trial.

Respondent, relying on sec. 301.7430-1(b)(2), Proced. & Admin. Regs., contends that there was more information available to petitioners at the time of the Appeals conference and that petitioners' failure to seek out and/or present that information to the Appeals officer should result in a failure to exhaust administrative remedies.  On the other hand, petitioners contend that they provided the Appeals officer with relevant information

---

[12] Subsequent to the Appeals conference, petitioners' pre-trial cost to develop third party information was $34,031.  By comparison, the amount of the income tax deficiency was $39,697.

in an attempt to settle the case in Appeals. Petitioners'
contention is based on their understanding of the controversy and
the factual development of the case at the time of the Appeals
conference. Petitioners argue that they made a good faith effort
to settle and thereby exhausted their administrative remedies.

Respondent's contentions that petitioner should have
provided Appeals with more information can be divided into two
general categories: (1) Information already in petitioners'
possession concerning the damage to their residence, and (2)
information concerning the insurance company's intent not to pay
petitioners for punitive damages. Initially, we consider the
first category of information available to petitioners that was
not provided to the Appeals officer.

In connection with their claim against the insurance
company, petitioners obtained two engineering reports concerning
the damage to the subsoil and to petitioners' residence. Those
reports were not provided to the Appeals officer, but they were
presented at trial in order to support petitioners' position
regarding the repairs to the residence. Although the reports
provided some support for petitioners' contention that the
repairs exceeded the insurance recovery, the reports would not
have resolved the issue being considered by Appeals; i.e.,
whether the settlement payment was paid to petitioners in
satisfaction of their claim for punitive damages.

Significantly, if respondent had been made aware of the expert reports, that information would not have caused respondent's position in the deficiency notice or in the litigation to be unreasonable or unjustified. The evidence already available to the Appeals officer sufficiently showed that the cost to repair the residence exceeded the amount of the insurance recovery. In addition, the Appeals officer was in possession of probative evidence supporting her conclusion that the payment may have been made in satisfaction of the punitive damages claim. In that setting, additional evidence bolstering petitioners' argument regarding the cost of repairs was cumulative. Therefore, petitioners' failure to provide the expert reports did not result in a failure to exhaust their administrative remedies.

Respondent also contends that under the language of the regulation--specifically "all relevant information that is known or should have been known", petitioners were required to seek out and present evidence of the intent behind the insurance company's settlement payment. We reject respondent's contention. It appears that respondent is employing the "known or should have been known" phrase out of context. The regulation requires disclosure of information, the relevance of which was "known or should have been known to the party or qualified representative at the time of * * * [the Appeals] conference." Sec. 301.7430-1

(b)(2), Proced. & Admin. Regs. (Emphasis supplied.) At the time of the Appeals conference, petitioners were not aware of the insurance company's intent in making the settlement payment. That information was discovered from third-party sources shortly before trial and almost 1 year after the Appeals conference.

The regulation requires disclosure of relevant information "to the extent such information and its relevance were known or should have been known to the party or qualified representative at the time of such conference." Id. In the context of the settlement conference with Appeals, that requirement was met by petitioners, who made a reasonable and good faith effort to provide the Appeals officer with relevant facts and law in the context and development of the case at the time of the conference.

In addition, under respondent's view, taxpayers might be required to seek out every possible piece of relevant evidence and/or to postulate every plausible theory in order to exhaust administrative remedies and to recover administrative or litigation costs. Respondent's approach also disregards the relative cost of developing all relevant information that is known or should have been known. Under respondent's approach to the regulation, few, if any, taxpayers might be able to present all relevant evidence that could have been developed.

The regulation does not require that petitioners present to the Appeals officer all evidence later adduced at trial. Instead, we are to consider whether petitioners exhausted their administrative remedies by providing relevant information in an attempt to settle the case in the context of the case development at the time of the Appeals conference.

At all pertinent times, petitioners were represented by tax professionals. They participated in the Appeals conference in a manner that provided relevant information in an attempt to resolve the case without litigation. The standard with respect to exhaustion of administrative remedies was intended to preserve the important role that the administrative Appeals process plays in the resolution of tax disputes. It was not intended to require taxpayers to adduce all possible arguments or evidence. Petitioners' approach to settlement was a reasonable attempt to convince the Appeals officer that the examiner's finding was in error.

In the circumstances of this case, we hold that petitioners exhausted their administrative remedies and are entitled to their litigation costs for the period commencing 3 days before trial, as decided by the Court of Appeals for the Ninth Circuit.

To reflect the foregoing,

> Decision will be entered
> under Rule 155.